In re Eugene A. HEATH and Arlene Heath, Debtors.

COMMONWEALTH of Pennsylvania SCHOOL EMPLOYEES' RETIRE-MENT FUND, Plaintiff,

v.

Eugene A. HEATH and Arlene Heath, Defendants.

Bankruptcy No. 80–00191K.
Adv. No. 80–0711K.

United States Bankruptcy Court,
E. D. Pennsylvania.

Feb. 19, 1981.

John Swartz and Alan H. Gilbert, Philadelphia, Pa., for plaintiff.

Thomas J. Turner, III, Philadelphia, Pa., for debtors/defendants.

Margaret Graham, Standing Trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Commonwealth of Pennsylvania School Employes' Retirement Fund ("Retirement Fund") has commenced an adversary proceeding to vacate the automatic stay imposed by Bankruptcy Code § 362 in order to permit it to proceed to Sheriff's sale.

The debtors request that the stay be continued, contending that the Retirement Fund is adequately protected because the mortgage in question is federally insured through the Veterans' Administration ("VA").

After a final hearing, pursuant to Bankruptcy Code § 362(e), the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On December 20, 1976, the debtors executed a mortgage on their residence at 2333 77th Avenue, Philadelphia, Pennsylvania, to Fidelity Bond and Mortgage Company recorded in Philadelphia County in Mortgage Book DCC No. 1044, Page 598.

2. The mortgage was insured by the United States Government through the Veterans' Administration for sixty (60) per cent of its value.

3. On October 10, 1977, the mortgage was assigned to the Retirement Fund and was duly recorded.

4. The mortgage is in default in that the debtors have failed to make monthly mortgage payments of principal and interest since July of 1979.

5. On January 31, 1980, debtors filed a Chapter 13 petition.

6. On November 17, 1980, the instant Complaint for Relief from the Stay was filed.

7. As of the date of trial, December 17, 1980, the debtors were approximately $4,848.12 in mortgage arrears.

8. Debtors have failed to make the required payments towards real estate taxes and hazard insurance causing the Retirement Fund to expend funds from the escrow account.

## DISCUSSION

A request for relief from the automatic stay is governed by Bankruptcy Code § 362(d), 11 U.S.C. § 362(d), which states:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The Retirement Fund alleges two (2) grounds for relief from the automatic stay: (1) lack of adequate protection of their interest in the property, and, alternatively, (2) that the defendant-debtors do not have an equity in the property and the property is not necessary to an effective reorganization.

The Retirement Fund need establish only one of these alternatives, found in § 362(d)(1), to support its claim for relief. *See In re Ruark*, 7 B.R. 46 (Bkrtcy., D.Conn. 1980).

■ The Retirement Fund, as the party requesting relief, has the burden of proof on the issue of the debtors' equity, or lack of equity, in the subject property. *See* § 362(g)(2). No evidence regarding equity was presented at trial. Accordingly, the Retirement Fund has failed to meet its burden of proof as to lack of equity and relief from the automatic stay under § 362(d)(2) may not be granted. It is to the questions of "adequate protection" and "cause" under § 362(d)(1) that plaintiff and defendants have directed their attention and which this Court now considers.

The term "adequate protection" is not defined in the Code. However, § 361 sets forth three (3) non-exclusive examples of what may constitute "adequate protection" if secured property is to be used by a debtor, i. e., (1) periodic cash payments equivalent to decrease in value, (2) an additional or replacement lien on other property, or (3) other relief that provides the indubitable equivalent. None of these has been offered. Instead, the debtors argue that the mortgage is federally insured thus, adequately protecting the mortgagee.

The concept of adequate protection as found in § 361

is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.

H.R.Rep.No.95–595, 9th Cong., 1st Sess. 339 (1977), U.S.Code Cong. & Admin. News 1978, 5787, 6295.

This concept of adequate protection was first discussed in *In re Murel Holding Corporation*, 75 F.2d 941 (2nd Cir. 1935) where Judge Learned Hand stated:

It is plain that 'adequate protection' must be completely compensatory; . . . a creditor . . . wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders unless by a substitute of the most *indubitable equivalence.*" (Emphasis added.)

*Id.* at p. 942.

■ In this case, the debtors, as the parties opposing relief from the stay are required by § 362(g)(1)[1] to shoulder the bur-

---

1. Section 362(g)(1) states as follows:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

den of proof as to adequate protection and all other issues, except the debtors' equity in the property.

■ In their answer, debtors have alleged a substantial equity in the property. However, after the creditor failed to sustain his burden of proof regarding lack of equity, but instead made out a prima facie case of "cause" for the lifting of the stay, the burden of going forward with proof of adequate protection shifted to the debtors. Debtors failed to sustain their burden and presented no evidence regarding their alleged equity in the property.

■ Thus, in the absence of an equity cushion sufficient to constitute adequate protection, the sole issue before us is whether a mortgage federally insured for sixty (60%) percent, standing alone, constitutes adequate protection. In the case *sub judice*, we conclude it does not.

To allow the debtors to retain possession of property on which mortgage payments have not been made to the mortgagee since July of 1979 solely because the mortgage is federally insured would not be in keeping with the equitable principles by which this Court is bound. An argument may be made that because the amount of arrearages ($4,848.12) is only eighteen (18%) percent of the unpaid mortgage ($25,931.24), the mortgagee is adequately protected until the arrearages reach the sixty (60%) percent insured level. Such an argument is impractical for a number of reasons. First, it would allow debtors to consciously abstain from making required mortgage payments, safe in the knowledge that the Court would not lift the stay for cause until they were sixty (60%) percent in arrears. A crafty debtor could eliminate the lifting of the stay, assuming the value of the property increases, by making random mortgage payments sufficient to create a minimal equity cushion, thereby remaining in the property indefinitely. Second, it would deprive the secured creditors of the benefit of their bargain for an extended period of time thereby leaving the mortgagees with unproductive loans in their portfolios. This runs squarely against the strong public policy of maintaining the integrity of banking institutions, especially in these perilous times when most banking and monetary systems border on questionable stability. *In re San Clemente Estates*, 5 B.R. 605, 6 B.C.D. 838, 842 (Bkrtcy., S.D.Calif.1980). The Court can envision circumstances where the sixty (60%) percent mortgage guarantee, when coupled with other factors, may constitute adequate protection, but standing alone, it is not the "indubitable equivalence" of the creditors bargain.

The debtors have also failed to keep current the real estate taxes and hazard insurance premiums. Fidelity Bond and Mortgage Company, as service company on the mortgage, has expended approximately $400.00, at time of trial, towards those required payments.

No proof as to the debtors' Chapter 13 plan was presented. The Court is unable to determine if current mortgage payments, or arrearage payments to the mortgagee, sufficient to constitute periodic cash payments, *See* § 361, are contemplated.

■ It must also be remembered that a bankruptcy court is a court of equity. The mortgagee has been paying the taxes and other costs on property while the debtors have failed to make any payments to them for over one and one-half (1½) years. As a court of equity, the bankruptcy court must consider "the impact of the stay on the parties and the 'balance of hurt' in fashioning relief." *In re Epps*, 2 B.R. 737, 6 B.C.D. 379 (S.D.N.Y.1980); *In re San Clemente Estates, supra.* The evidence leads this court to conclude that continuance of the stay will hurt the mortgagee to a greater extent than vacation of the stay will impair the rights of the debtors. Section 362(g)(2) clearly places the burden of proving otherwise on the debtors and they have failed to meet the burden.

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

The argument may be made that at a future date when arrearages equal sixty (60%) percent of the mortgage, the Retirement Fund will then be awarded back mortgage payments plus back interest thereby giving the mortgagee the indubitable equivalent of its original investment. While the allowance of interest would fully compensate the creditor and grant it the benefit of its bargain, we will not ask a secured creditor to wait patiently for three, four or five years until arrearages reach sixty (60%) percent before receiving a return on its investment. Had the debtors been making current payments and offered to make up arrearages, this result may have been different.

Our holding today reflects a belief that the concept of adequate protection requires that the secured creditor be completely compensated or be given a "substitute of the most indubitable equivalence" either now or in the near future. Adequate protection is a vague term. Almost limitless are the options that the debtor has to choose from to supply the protection required by law. Under these circumstances, to require a secured creditor to wait an indefinite period of time for the benefit of its bargain, even with interest, does not constitute adequate protection of its interest in the subject property.

Accordingly, in the absence of proof that the interests of the secured creditors are "adequately protected", the request for relief from the stay is granted.

## CONCLUSIONS OF LAW

1. The Plaintiff, Retirement Fund, has sustained its burden of establishing "cause" for the lifting of the stay as required under Code § 362(d)(1).

2. The debtors have not sustained their burden of proving that they have furnished the Retirement Fund with adequate protection for its interest in the mortgaged property.

3. The Retirement Fund is entitled to an order lifting the automatic stay and to the relief requested in the Complaint.