In re **FIDELITY AMERICA MORTGAGE CO.**, a Delaware Corporation, Debtor.

**Irwin ALTER, Alvin Lapidus, P.A. and United Funding Corporation, Plaintiffs,**

v.

**FIDELITY AMERICAN MORTGAGE CO.\*, Defendant.**

**Bankruptcy No. 81–00387G.
Adv. No. 81–0512G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 30, 1982.

Lawrence J. Lichtenstein, Sklar, Lichtenstein & Sklar, P.C., Philadelphia, Pa., for plaintiffs, Irving Alter, Alvin Lapidus, P.A. and United Funding Corp.

---

\* The plaintiff incorrectly names the defendant as "Fidelity American Mortgage Co." The plaintiff's correct name is "Fidelity America Mortgage Co.," and this opinion will refer to the defendant by its correct name.

Charles M. Golden, Daniels, Golden & Saltz, P.C., Philadelphia, Pa., for debtor, Fidelity American Mortg. Co.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether we should grant relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code ("the Code") to permit the lenders to foreclose upon certain real property of the debtor. We conclude that the lenders are entitled to such relief because we find that the debtor lacks equity in the property in question and because the property is not necessary to the debtor's reorganization.

The facts of the instant case are as follows:[1] On August 3, 1979, the Fidelity America Mortgage Company ("the debtor") executed and delivered to Irving Alter, Alvin Lapidus, P.A., and the United Funding Corporation ("the lenders") a deed of trust to premises located at 412–420 West Redwood Street, Baltimore, Maryland ("the Redwood Street property") to secure the repayment of a loan made between the aforesaid parties in the principal amount of $300,000.00. On the same day, the Fidelity America Financial Company ("FAFCO") executed and delivered to the lenders its guarantee of the abovementioned obligation.[2] In December, 1980, the lenders declared the deed of trust to be in default and initiated foreclosure proceedings against the Redwood Street property. Those foreclosure proceedings were automatically stayed on February 4, 1981 when the debtor filed a petition for reorganization under chapter 11 of the Code. On May 13, 1981, the lenders filed the instant complaint to terminate the automatic stay in order to be able to proceed, once again, with foreclosure on the subject premises. The lenders allege that the debtor has no equity in the property in question and that the debtor continues to use said property without ade-

quate protection of the lenders' interest therein.

Section 362(d) provides the conditions to be met in order for a party in interest to be entitled to relief from the automatic stay provisions of that section:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay.—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Section 362(g) allocates the burden of proof in a complaint for relief from the stay and provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

As to the value of the real property in question, the chairman of the board of the debtor testified that the fair market value of the premises is, in his opinion, somewhere between $500,000.00 and $800,000.00 (N.T. 7/8/81 at 24). The lenders' expert witness, on the other hand, testified that the property has a fair market value between $272,500.00 and $348,000.00 (N.T. 6/23/81 at 17–19). In weighing this conflicting testimony, we accept the appraisal

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Fidelity America Financial Corporation is the parent company of Fidelity America Mortgage Company (N.T. 7/8/82 at 24).

of the lenders' witness as being more reliable in view of the fact that that witness is a qualified and disinterested appraiser (N.T. 6/23/81 at 9–11) while the qualifications of debtor's chairman amount to his testimony that he financed the owner and principal tenant of the building and that he visited the premises on a number of occasions (N.T. 7/8/81 at 24). *See In re Kaufman*, 24 B.R. 498, 500 (Bkrtcy.E.D.Pa.1982). We disagree with the debtor's contention that an accurate resolution of the fair market value can only be obtained by offering the premises for sale for over a reasonable period of time. In determining the fair market value of the subject property, we are bound by the testimony, rather than by what may happen at a future time.

As to whether the debtor has equity in the property in question, we note that all encumbrances against the subject property are to be considered when determining whether an equity cushion exists in that property. *In re Kaufman, supra; In re Mikole Developers, Inc.*, 14 B.R. 524 (Bkrtcy.E.D.Pa.1981). In addition, the costs of foreclosure and sale, including brokerage, escrow and title costs, are also to be taken into consideration in determining whether there is any equity in the encumbered premises. *In re Pitts*, 2 B.R. 476 (Bkrtcy.C. D.Cal.1979). Having already accepted the lenders' estimation of the fair market value of the subject property, a conservative analysis of the encumbrances against the property clearly indicates that there is no equity therein regardless of whether the property is valued at $272,500.00 or $348,000.00.[3] Moreover, we need not consider whether the property in question is necessary to the debtor's reorganization since the debtor concedes that if no equity exists in the subject property, that property is of no value to its ultimate reorganization.[4] Consequently, since the debtor has no equity in the property in question and since the subject property is not necessary to the debtor's reorganization, we conclude that the lenders are entitled to a modification of the automatic stay pursuant to section 362(d)(2) of the Code.[5]

---

3. Obligations secured by the deed of trust *as of 8/3/81:*

| | |
|---|---|
| $300,000.00 | (loan principal) |
| 36,000.00 | (interest on loan principal, 9/30/80–5/3/81) |
| 7,000.00 | (foreclosure expenses) |
| 10,000.00 | (renewal fee for deed of trust) |
| 4,000.00 | (late charges) |
| 600.00 | (ground rent) |
| 22,558.90 | (taxes) |
| 3,609.31 | (water and sewer charges to 4/1/81) |
| 850.00 | (quarterly charges for unpaid water and sewer charges) |
| $384,618.21 | (minimum amount secured by the lenders' deed of trust) |

Even if, as the debtor contends, we subtract from the $384,618.21 the $30,825.25 of rent withheld by the tenant of the premises at the lenders' instructions (N.T. 6/23/81 at 39; N.T. 7/8/81 at 20), the resulting obligation is still greater than the fair market value of the property.

4. *See* debtor's brief in opposition to complaint to terminate automatic stay at p. 3.

5. Section 362(d) permits modification of the automatic stay upon alternative grounds. Relief may be granted under § 362(d)(1) upon a finding that a debtor's interest in property is not adequately protected or under § 362(d)(2) upon a finding that the debtor has no equity in the property and that that property is not necessary to an effective reorganization. *See In re Schramm*, 12 B.R. 608 (Bkrtcy.E.D.Pa.1981); *In re Heath*, 9 B.R. 665 (Bkrtcy.E.D.Pa.1981); *In re High Sky, Inc.*, 15 B.R. 332 (Bkrtcy.E.D.Pa. 1981).