**In re Marjorie Maree McCALL a/k/a Cavalieri, Debtor.**

**FIRST MORTGAGE CO. OF PA., Plaintiff,**

v.

**Marjorie Maree McCALL a/k/a Cavalieri, Defendant.**

**Bankruptcy No. 81–04297G.**
**Adv. No. 81–1559G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 3, 1982.

---

**200**

Richard F. Stern, Jenkintown, Pa., for plaintiff, First Mortg. Co. of Pa.

Roderick D. Mathewson, Norristown, Pa., for debtor/defendant, Marjorie Maree McCall a/k/a Cavalieri.

Melvin J. Buckman, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for Unsecured Creditors' Committee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should grant relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code ("the Code") to permit the mortgagee to foreclose on the debtor's property. We conclude that the mortgagee is not entitled to such relief because we find that the debtor has equity in the property in question and because the mortgagee's interest in the subject property is adequately protected by the existing equity cushion therein.

The facts of the instant case are as follows:[1] On February 25, 1980, the First Mortgage Company of Pennsylvania ("the mortgagee") entered into a loan agreement with the Cavalieri Group, Inc., William J. Cavalieri and Marjorie M. Cavalieri, also known as Marjorie Maree McCall ("the debtor"), wherein the aforesaid parties became indebted to the mortgagee for the sum of $223,608.00. The loan was payable in eighty-four (84) monthly installments of $2,662.00. As collateral for the abovementioned loan, the debtor mortgaged her property, located at 912 Spring Mill Road, Villanova, Pennsylvania to the mortgagee. On the same day, the debtor executed a bond and warrant to the mortgagee for the aforesaid $223,608.00.

The last payment due under the abovementioned loan agreement was made on September 3, 1980. Consequently, on December 10, 1980, the mortgagee filed a complaint in assumpsit in the Court of Common Pleas of Montgomery County, Pennsylvania, demanding judgment against the debtor. Accordingly, summary judgment was granted in the Court of Common Pleas of Montgomery County in the amount of $223,440.22.

On October 20, 1981, the debtor filed a petition for reorganization under chapter 11 of the Code. On November 4, 1981, the

---

1. This opinion constitutes the findings of fact and concusions of law required by rule 752 of     the Rules of Bankruptcy Procedure.

mortgagee filed the instant complaint to modify the automatic stay alleging that: (1) its interest in the subject property is not adequately protected; (2) the debtor has no equity in the premises in question; and (3) that the debtor has no reasonable prospect for reorganization.

Section 362(d) provides the conditions to be met in order for a party in interest to be entitled to relief from the automatic stay provisions of that section:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
> >
> > (2) with respect to a stay of an act against property, if—
> >
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Section 362(g) allocates the burden of proof in a complaint for relief from the stay and provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> > (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

At the trial of the instant complaint, the mortgagee, in attempting to carry its burden of proving that the debtor does not have equity in the property in question, called Ms. Rene McNally ("McNally"), a real estate agent, to testify as to the fair market value of the subject property. McNally testified that she considered the fair market value of the aforementioned property to be in the low $400,000.00 range

(N.T. 6/14/82 at 10). On the other hand, the debtor's witness, an expert appraiser, testified, based on an appraisal performed in December of 1981, that the subject property had a fair market value of $650,000.00 (N.T. 6/14/82 at 134). In weighing this conflicting testimony, we accept the appraisal of the debtor's expert witness as being more reliable in view of the fact that: (1) the debtor's witness is a certified and qualified appraiser while the mortgagee's witness, the only one called by the mortgagee on the issue of fair market value, testified that she had no certifications or qualifications as a real estate appraiser (N.T. 6/14/82 at 12); (2) the mortgagee's witness had an apparent interest in establishing as low a value as possible in that she had been engaged by a prospective buyer to negotiate a purchase for that buyer at the lowest possible price (N.T. 6/14/82 at 19–20); and (3) the "comparable" properties used by the mortgagee's witness in establishing a value for the property in question are significantly dissimilar so as to cast doubt on that witness's estimation that the subject property has a fair market value in the low $400,000.00 range. However, the expert witness also testified that because of the buying community's awareness of the debtor's financial straits, the minimum offer he would recommend that the debtor accept would be $500,000.00 (N.T. 6/14/82 at 142). He further testified, however, that with a full year to market the property, the property could command a selling price of $600,-000.00 (N.T. 6/14/82 at 146). Consequently, we conclude that the fair market value of the property in question is $600,000.00.

In determining whether the debtor has equity in the property in question, we note that all encumbrances against the subject property are to be considered when determining whether an equity cushion exists in that property. *In re Kaufman*, 24 B.R. 498 (Bkrtcy.E.D.Pa.1982); *In re Mikole Developers, Inc.*, 14 B.R. 524 (Bkrtcy.E.D.Pa.1981). In addition, the costs of foreclosure and sale, including brokerage, escrow and title costs, are also taken into

consideration in determining whether there is any equity in the encumbered property. *In re Pitts*, 2 B.R. 476 (Bkrtcy. C.D.Cal.1979). Consequently, we must consider, in calculating the debtor's equity in the subject premises or lack thereof, the judgment of the Court of Common Pleas of Montgomery County against the debtor in the amount of $223,440.22, which sum includes, according to the Court of Common Pleas, the balance of principal and interest due under the loan agreement together with late charges and attorney's fees. We express no opinion as to the validity of that judgment. However, the judgment constitutes an encumbrance against the property in question and, for purposes of determining the instant complaint for relief from the stay, we are bound by it. In addition, there are prior liens against the subject property in the approximate amount of $32,000.00. Having already accepted the expert witness's estimation of the fair market value of the property in question, an analysis of the encumbrances against that property clearly indicates that there is equity therein of at least $344,-559.78,[2] resulting in an equity cushion of approximately thirty-five (35) percent.[3] Furthermore, it should be noted that the mortgagee's president testified that despite the $223,440.22 judgment entered by the Court of Common Pleas of Montgomery County, the mortgagee would accept, if payment were made at the time of trial, the sum of $197,703.12 in satisfaction of the debtor's obligation (N.T. 6/14/82 at 76). Apparently then, the $197,703.12 represents the actual amount owed the mortgagee by the debtor at the time of trial whereas the $223,440.22 judgment was entered because the various loan documents provided that judgment could be entered in that amount without regard to the amount owing at a particular time. Consequently, we conclude that the mortgagee is not entitled to relief from the stay pursuant to section 362(d)(2).[4]

With respect to section 362(d)(1),[5] we conclude that the mortgagee is likewise not entitled to relief thereunder because the mortgagee's interest in the subject property is adequately protected in that the debtor, as heretofore demonstrated, has established the existence of an equity cushion in said property.[6] We have previously held that an equity cushion may, under appropriate circumstances, serve as adequate protection for the mortgagee's interest in the encumbered property.[7] *In re Cooper*, 22 B.R. 718 (Bkrtcy.E.D.Pa.1982). In the case *sub judice*, an equity cushion of approximately thirty-five (35) percent exists in the subject property even though we have used in our calculation an amount greater than the sum

---

**2.**

| | | |
|---|---|---|
| | $600,000.00 | (fair market value of the subject property) |
| − | 223,440.22 | (judgment of Court of Common Pleas of Montgomery County representing balance of principal and interest due under the loan agreement together with late charges and attorney's fees) |
| − | 32,000.00 | (prior liens) |
| | $344,559.78 | (resulting equity) |

**3.**

| | | |
|---|---|---|
| | $ 89,119.56 | (the amount of equity over the total of encumbrances) |
| | $255,440.22 | (total of encumbrances) |

**4.** Since we find that there is equity in the property, we need not consider whether the property is necessary to the debtor's plan of reorganization.

**5.** Section 362(d) permits modification of the automatic stay upon alternative grounds. Relief may be granted under § 362(d)(1) upon a finding that a debtor's interest in property is not adequately protected or under § 362(d)(2) upon a finding that the debtor has no equity in the property and that that property is not necessary to an effective reorganization. *See In re Schramm*, 12 B.R. 608 (Bkrtcy.E.D.Pa.1981); *In re Heath*, 9 B.R. 665 (Bkrtcy.E.D.Pa.1981); *In re High Sky, Inc.*, 15 B.R. 332 (Bkrtcy.E.D.Pa. 1981).

**6.** Equity is not only relevant to subsection (d)(2) of § 362, it is also relevant to subsection (d)(1) on the issue of adequate protection. *See In re DiBona*, 9 B.R. 21 (Bkrtcy.E.D.Pa.1981).

**7.** While "adequate protection" is not defined in the Bankruptcy Code, the legislative history of § 361 reflects the intent of Congress to give the courts the flexibility to fashion the relief in light of the facts of each case and general equitable principles. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787.

the mortgagee alleged to be owing at the time of trial.[8]

Finally, we must dismiss the debtor's counterclaim in the nature of a recoupment which raises issues arising out of the loan agreement which was the subject of the judgment of the Court of Common Pleas of Montgomery County. As mentioned earlier, the judgment of that court is binding on us for purposes of the instant complaint. Any claim that the debtor might have against the mortgagee involving amounts owing under the loan agreement must be addressed to the Court of Common Pleas since that court has already determined the amounts owing under said agreement.

---

8. This is especially true in light of the fact that a substantial portion of the $223,440.22 judgment entered by the Court of Common Pleas of Montgomery County consists of unearned future interest allegedly due under the loan agreement. Despite the fact that that Court of Common Pleas entered judgment on the pleadings, there is considerable disagreement as to the precise amount owing under the loan agreement and the judgment of the Court of Common Pleas has been appealed to the Superior Court of Pennsylvania.