**In re Rebecca ROBINSON, Debtor.**

**Rebecca ROBINSON, Plaintiff,**

v.

**FORD MOTOR CREDIT COMPANY and Union Lincoln-Mercury, Inc., Defendants.**

**Bankruptcy No. LR 83–548. Adv. No. AP 83–450F.**

United States Bankruptcy Court, E.D. Arkansas, W.D.

Dec. 28, 1983.

Marquis Jones, Little Rock, Ark., for debtor, Rebecca Robinson.

W.R. Nixon, Jr., Little Rock, Ark., for Ford Motor Credit Co.

Mark J. Raible, Little Rock, Ark., for Union Lincoln-Mercury, Inc.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

ROBERT F. FUSSELL, Bankruptcy Judge.

The debtor, Rebecca Robinson, filed for relief under Chapter 13 on June 13, 1983. Included with the petition was her Chapter 13 plan. The Chapter 13 plan proposes to pay $132.00 per month to the Trustee for a period of thirty-six (36) months. Out of the funds received by the Trustee the debtor proposes to pay her secured creditors in full, to pay the claim of Arkansas Social Services in full and to pay her remaining unsecured creditors 10% of their claims. After notice and without objection, the Chapter 13 plan was confirmed on August 31, 1983.

Ford Motor Credit was included in the debtor's Chapter 13 petition as a secured creditor and pursuant to the plan is proposed to be paid the full amount of its claim.

The collateral securing the debt owed Ford Credit is a 1980 Mercury Capri. The vehicle had been purchased by Japonica McCall from Union Lincoln-Mercury, Inc. on January 4, 1980. At that time, Ms. McCall executed an Arkansas Automobile Retail Installment Contract granting a security interest in the vehicle to Union Lincoln-Mercury, Inc., on that same day Union Lincoln-Mercury assigned the contract to Ford Motor Credit with recourse. The security interest was later perfected and recorded on a Certificate of Title which was retained by the creditor.

On June 10, 1981, Japonica McCall transferred her interest in the vehicle to Rebecca Robinson upon payment of $500.00 and Ms. Robinson's agreement to assume all payments on the installment contract. Thereafter Ms. Robinson made all required monthly payments beginning in July, 1981 until March, 1983.[1] Ms. Robinson defaulted on the payments for April and May, 1983 which caused Ford Motor Credit to accelerate the balance and repossess the vehicle, without breach of the peace, on May 20, 1983. Subsequently on June 3, 1983, Ms. Robinson filed her bankruptcy petition and on June 9, 1983 filed pleadings with this court requesting turnover of the vehicle.

On the day that the vehicle was repossessed, Ford Motor Credit transferred the vehicle and the contract to Union Lincoln-Mercury, Inc. in good faith and pursuant to the repurchase agreement. The vehicle has not been sold and is currently in the possession of Union Lincoln-Mercury.

Witnesses for Ford Credit and Union Lincoln-Mercury testified that the balance due on the contract as of June 3, 1983 was $1,879.64 and that her liquidation value of the vehicle was between $500.00 to $700.00 as of that same date. The debtor's testimony placed a value of approximately $2,000.00 on the vehicle.

### CONCLUSIONS OF LAW

■ This court views the recent Supreme Court decision in *United States v. Whiting Pools, Inc.,* (1983) —— U.S. ——, 103 S.Ct.

---

1. The debtor made a total of twenty-one straight monthly payments before a default in a payment.

2309, 76 L.Ed.2d 515 (1983), as controlling on the issue of whether a debtor in a Chapter 11 or a Chapter 13 proceeding is entitled to possession of property seized by a secured creditor prior to the filing of the bankruptcy petition.[2] In *Whiting Pools,* the court determined that collateral seized immediately prior to the filing of a Chapter 11 petition was property of the estate and was subject to a turnover Order pursuant to Section 542(a). While the court gave no opinion as to the effect of its decision in the context of a Chapter 13, the court's interpretation of the statutory language and reasoning for giving such a broad effect to § 542(a) are equally applicable to individual reorganization under Chapter 13 as it is to business reorganization under Chapter 11.

The court in *Whiting Pools* summarized the applicable statutory language as follows:

> "Section 542(a) requires an entity in possession of 'property that the trustee may use, sell or lease under § 363' to deliver that property to the trustee. Subsection (b) and (c) of § 363 authorizes the trustee to use, sell or lease any 'property of the estate,' subject to certain conditions for the protection of creditors with an interest in the property. Section 541(a)(1) defines the 'estate' as 'comprised of all the following property, wherever located: (1) ...all legal or equitable interests of the debtor in property as of the commencement of the case."

The court gave a broad interpretation to this statutory language bringing within its scope property in which the debtor had no possessory interest at the time of filing and which is in the possession of a creditor having a security interest in the property. The court reasoned that this broad interpretation was supported not only by the statutory language but also by reviewing the legislative history reflecting a congressional goal of encouraging reorganization. The court also found that § 363(e) provides the secured creditor with protection which safe-guards the creditors' security interest while the debtor has the collateral in his possession thereby facilitating and supporting the broad application of § 542(a).

The statutes pertinent to the *Whiting Pools* decision are sections 541(a)(1), 542(a) and 363(b), (c) and (e). These provisions are also applicable to cases under Chapter 13 pursuant to section 103 of the Code. Pursuant to section 1303, the debtor in Chapter 13 is given, exclusive of the trustee, the rights and powers of a trustee under sections 363(b) and (e), and where the Chapter 13 debtor is engaged in business, he has exclusive of the trustee, the rights and powers of the trustee under section 363(e). The statutory scheme of the Code provides Chapter 13 debtors with the same right to use, sell and lease property of the estate that is granted the debtor in possession under Chapter 11.

A review of the legislative history surrounding the enactment of Chapter 13 of the Bankruptcy Code reveals that Congress was responding to a major problem which existed in Chapter XIII under the Act. The House Committee on the Judiciary in its report to the House on the proposed Bankruptcy Code defined the problem facing Congress and the purpose of the Code as follows:

> "The second major problem under current bankruptcy law is the inadequacy of relief that the Bankruptcy Act provides for consumer debtors. The last major revision of the Bankruptcy Act was in 1938, before any significant amount of consumer credit had been extended. In the postwar years, consumer credit has become a major industry, and buying on time has become a way of life for a large segment of the population. The bankruptcy rate among consumers has risen accordingly, but without the required provisions in the Bankruptcy Act to protect those who need bankruptcy relief. This bill makes bankruptcy a more effective remedy for the unfortunate consumer debtor.

2. *Flournoy v. City Finance,* 679 F.2d 821, 6 C.B.C.2d 965 (11th Cir.1982) relied upon by the creditor in their case was decided prior to the Supreme Court's decision in *Whiting Pools, supra.*

This is not primarily a debtor's bill, however. The bill codifies creditors' rights more clearly than the case law, which is in many ways just developing. It defines the protections to which a secured creditor is entitled, and the means through which the court may grant that protection. In the consumer area, proposed Chapter 13 encourages more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy liquidation and discharge." H.R.Rep. No. 95–595, p. 4, U.S.Code Cong. & Admin.News 1978, p. 5787 (1977).

The extensive changes in Chapter 13 under the Code include expanding eligibility to include any individual with regular income with debts under $100,000.00 unsecured and $350,000.00 secured under section 109(e). The new eligibility requirements encourages and permits more debtors to qualify for relief and presents an alternative for small businessmen and farmers to the harshness of Chapter 7 and the complexities of Chapter 11. Some of the other changes enacted in an effort to encourage use of Chapter 13 include, the co-debtor stay which protects Chapter 13 debtors from indirect pressure from friends or relatives, the elimination of unsecured creditors voting on confirmation of the plan, expanded "Federal" exemptions, broader discharge provisions, and the provisions for dealing with secured creditors through valuation of the creditors secured interest. H.R.Rep. No. 95–595, pp. 116–173.

The changes which were made a part of Chapter 13 in the Bankruptcy Code clearly reflect an intent on the part of Congress to encourage use of Chapter 13 as an alternative to liquidation. Congressman Edwards, during the House debates held in October, 1977, made the following report concerning Chapter 13:

"These changes will give personal debtors the protection they need to repay their debts, free from the pressure of creditors who may not be willing to give the debtor a chance to try to work things out. We found that most individual debtors that wind up in bankruptcy are there for causes beyond their control, such as illness, accidents, or job layoffs. They are not deadbeats but are honest citizens who need a fresh start that the bankruptcy court can provide. That is why we do everything we can in this bill to facilitate repayment plans..." 123 Cong.Rec. H11699 (daily ed. Oct. 27, 1977); Collier on Bankruptcy, 15th Ed.App. 3, IV, p. 12.

It is apparent to this court that the congressional goal of encouraging individual reorganization under Chapter 13 is as high a priority, if not higher, as the goal of encouraging Chapter 11 which the Supreme Court refers to in *Whiting Pools.* The broad application of § 542(a) in a Chapter 13 proceeding is entirely consistent with this goal and is consistent with the Supreme Court analysis and conclusion in *Whiting Pools.*

This court, after a review of the legislative history, can discern no reason to apply § 542(a) differently in a Chapter 13 than in a Chapter 11. The debtor, Rebecca Robinson, has proposed a Chapter 13 plan which proposes to pay Ford Motor Credit the full amount of its claim over a period of thirty-six months. The debtor is attempting to use Chapter 13 and § 542(a) as a means of retaining an asset which she will utilize to assist her in performing under her plan. In so doing she will be providing payments for her creditors and working toward a fresh start financially for herself. Her efforts are consistent with the goal of Congress in encouraging Chapter 13 and corresponds with the use of § 542(a) by the debtor in the *Whiting Pools* case. Consequently, Rebecca Robinson's Complaint for Turnover is granted and the defendants Ford Motor Credit and Union Lincoln-Mercury, Inc. shall be ordered to deliver possession of the 1980 Mercury Capri to the debtor.

A separate Order consistent with these Findings of Fact and Conclusions of Law is entered contemporaneously herewith.