**In re James J. ATTINELLO and Elizabeth Attinello, Debtors.**

**ASSOCIATES COMMERCIAL CORP., Plaintiff,**

v.

**James J. ATTINELLO and Elizabeth Attinello and Frederick L. Reigle, Trustee, Defendants.**

**Bankruptcy No. 83–00651 T. Adv. No. 83–0547.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 5, 1984.

Gary P. Lightman, Fellheimer, Eichen & Goodman, Philadelphia, Pa., for plaintiff.

James J. Narlesky, Easton, Pa., for debtors.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

At issue in this adversary proceeding is the right to possession of a 1980 Freightliner tractor (hereinafter "tractor"), which is currently in the possession of the plaintiff as a result of the plaintiff's pre-petition repossession of it from the Chapter 13 debtors-defendants. The plaintiff seeks, pursuant to Section 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d), relief from the automatic stay so that it may pursue its state law remedies with regard to the tractor. The debtors seek turnover of the tractor to them pursuant to Sections 542 and 543 of the Bankruptcy Code, 11 U.S.C. §§ 542 and 543. For the reasons hereinafter given, we shall deny the plaintiff relief from the automatic stay and grant the debtors' request for turnover.[1]

## I. FACTS

The facts essential to our resolution of this matter are as follows. Pursuant to a Transfer and Assumption Agreement (hereinafter "security agreement"), dated January 22, 1982, the debtors became jointly liable to the plaintiff for payment of the $36,639.37 balance due on the aforementioned tractor while the plaintiff retained its perfected security interest in the tractor. The security agreement provided, *inter alia*, for the debtors to make a payment of $890.83 on January 25, 1982, followed by 27 consecutive monthly installment payments of $1,324.02. The monthly installment payments were to be paid on the 25th of each month, beginning with February 25, 1982. The debtors made the required payments through September 25, 1982, but did not make any payments thereafter. Therefore, on January 28, 1983, the plaintiff lawfully repossessed the tractor. At that time and prior thereto, debtor James Attinello had been using the tractor in his employment as a long-haul independent truck driver.

On February 2, 1983, pursuant to the security agreement, the debtors received notification from the plaintiff that the tractor would be sold on February 22, 1983 unless the debtors redeemed the tractor by payment of the $31,157.71 redemption price before the scheduled sale.

The sale was stayed, however, by the debtors' filing of their Chapter 13 bankruptcy petition in our Court on February 15, 1983.

Subsequently, a combined hearing was held on the plaintiff's request for relief from the automatic stay and the debtors' request for turnover of the tractor. The evidence presented at the hearing chiefly concerned the fair market value of the tractor. The plaintiff's valuation witness testified that she believed that the tractor had a fair market value of $28,965.00. The debtors' valuation witness expressed his belief that $38,000.00 was the fair market value.

The evidence adduced at the hearing established a debt of $31,157.71 owing from the debtors to the plaintiff for the tractor. There are no liens against the tractor other than the plaintiff's lien. The tractor is still in the plaintiff's possession.

## II. DISCUSSION

In order to resolve this matter, we must first determine the nature of the debtors' interest in the tractor immediately upon their filing of their Chapter 13 bankruptcy petition.

In *United States v. Whiting Pools, Inc.*, —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court held that a Chapter 11 reorganization estate includes property of the debtor that has been repossessed by a secured creditor prior to the filing of the Chapter 11 bankruptcy petition. Such property, therefore, is subject to turnover pursuant to § 542 of the Bankruptcy Code. The Court's analysis was based, in part, on the congressional goal of

---

1. This Opinion constitutes the findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

encouraging and facilitating Chapter 11 reorganizations. The Court declined to express its view as to the applicability of its holding in Chapter 7 or Chapter 13 cases. — U.S. ——, n. 17, 103 S.Ct. 2315, n. 17, 76 L.Ed.2d 524, n. 17.

■ We see no reason, however, why the holding in *Whiting Pools* should not apply in Chapter 13 cases. The only possible reason for non-applicability, we believe, is if Congress' desire to encourage and facilitate Chapter 13 reorganization and rehabilitation was found to be of a significantly lesser degree than its desire to encourage and facilitate Chapter 11 reorganization and rehabilitation. However, our review of both the Bankruptcy Code and its legislative history convinces us that such is not the case. The aforementioned congressional desire is of the same general magnitude with respect to both Chapter 13 and Chapter 11 cases. In considering the same issue and reaching the same result, the Court in *In re Robinson*, 36 B.R. 35, 37–38 (Bkrtcy. E.D.Ark.1983), offers an excellent analysis of the strong congressional desire, as manifested by both the Bankruptcy Code and the legislative history of Chapter 13, to encourage debtor rehabilitation through Chapter 13. We agree with that analysis (which will not be repeated here) and with its conclusion, at 36 B.R. 38:

> "It is apparent to this court that the congressional goal of encouraging individual reorganization under Chapter 13 is as high a priority, if not higher, as the goal of encouraging Chapter 11 which the Supreme Court refers to in *Whiting Pools*. The broad application of § 542(a) in a Chapter 13 proceeding is entirely consistent with this goal and is consistent with the Supreme Court's analysis and conclusion in *Whiting Pools*."

The only other reported post-*Whiting Pools* case which considered this issue, *In re Radden*, 35 B.R. 821 (Bkrtcy.E.D.Va. 1983), also applied the holding in *Whiting Pools* in a Chapter 13 case.

Therefore, we find that the repossessed tractor is part of the debtors' Chapter 13 estate and is subject to turnover pursuant to § 542.[2]

The plaintiff argues, however, apart from the question of the applicability of *Whiting Pools* in Chapter 13 cases, that *Whiting Pools* is not controlling in the present case because the Internal Revenue Service was the secured creditor in *Whiting Pools* and its repossession of the debtor's personal property was accomplished pursuant to the Internal Revenue Code, whereas, in our case, the plaintiff's repossession was accomplished pursuant to Pennsylvania state law. Therefore, argues the plaintiff, the debtors' interest in the tractor immediately upon the filing of their bankruptcy petition, must be determined according to Pennsylvania law. According to Pennsylvania law, continues the plaintiff, the debtors' interest at that time was merely the right to redemption of the tractor upon full payment of the $31,157.71 redemption price, and not any type of possessory interest. The plaintiff further argues that the case of *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), requires that we look to state law and not federal law to determine the debtors' property interest in the tractor.

The plaintiff's interpretation of *Whiting Pools* is incorrect. The analysis and holding in *Whiting Pools* clearly applies to a debtor's interest in repossessed property in general, whether repossessed under state law or federal law, and whether repossessed by the Internal Revenue Service or some other secured creditor. On this matter, the scope of the Court's decision is broad. For example, the Court states at — U.S. ——–——, 103 S.Ct. 2314–15, 76 L.Ed.2d 522–23:

> "While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings."

**2.** Because of this finding, we need not consider the debtors' contention that they are entitled to turnover of the tractor pursuant to 11 U.S.C. § 543 (Turnover of property by a custodian.)

The Court later states at —— U.S. ——, 103 S.Ct. 2315, 76 L.Ed.2d 524:

> "We conclude that the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization. We see no reason why a different result should obtain when the IRS is the creditor."

We also note that the plaintiff's reliance on *Butner v. United States, supra,* is misplaced. *Butner* held that, in bankruptcy cases, the courts should look to state law to determine a debtor's property interests unless Congress or some other federal interest requires otherwise. In the present context, the *Whiting Pools* decision clearly requires us to be governed by the Bankruptcy Code, particularly § 542, and not by state law, in determining the debtors' interest in the tractor.

The two cases which have considered this issue subsequent to the *Whiting Pools* decision, *In re Robinson, supra,* and *In re Radden, supra,* have also concluded that *Whiting Pools* applies fully to interests in property repossessed by secured creditors pursuant to state law.

▆▆▆ Having determined that the tractor is part of the debtors' Chapter 13 estate and thus subject to § 542 turnover, we must next determine whether the debtors are actually entitled to turnover. To be so entitled, they must show that the plaintiff's secured interest in the tractor is adequately protected. See 11 U.S.C. § 363(e) and 11 U.S.C. § 361. We find that, under the circumstances of this case, the plaintiff's secured interest is adequately protected by the equity cushion which the debtors have in the tractor. An equity cushion is simply the amount of equity which a debtor has in an item of property, and which is computed by subtracting the amount of all of the encumbrances against an item of property from the fair market value of the property. It is sometimes expressed as a percentage derived from dividing the amount of equity by the amount of all of the encumbrances. See *In re McCall,* 25 B.R. 199 (Bkrtcy.E.D. Pa.1982). It is well-established that an eq-

uity cushion can provide adequate protection of a secured creditor's interest in property. See, e.g., *Com. of Pa. State Emp. Retirement Fund v. Roane,* 14 B.R. 542 (D.C., E.D.Pa.1981); *In re McCall, supra; In re Pitts,* 2 B.R. 476 (Bkrtcy.C.D.Cal. 1979).

In the present case, a witness for each side testified as to the fair market value of the tractor. As indicated *supra,* the plaintiff's witness set the fair market value at $28,965.00, while the debtors' witness arrived at a figure of $38,000.00. For various reasons, we find the appraisal of the debtors' witness to be much more reliable and well-founded. In the first place, the plaintiff's witness is an employee of the plaintiff, whereas the debtors' witness is disinterested in this matter. Secondly, the debtors' witness personally inspected the tractor, whereas the plaintiff's witness did not. Thirdly, the debtors' witness has had considerably more experience in the appraisal of tractors than has the plaintiff's witness. In addition, the debtors' witness has had formal training in the appraisal of tractors, while the plaintiff's witness has not. Finally, both witnesses based their appraisals, in part, upon the Truck Blue Book, which was admitted into evidence as an exhibit in this case. It appears to us that the debtors' witness' use of the Truck Blue Book was more accurate than the use made of it by the plaintiff's witness as it pertains to the value of the particular tractor in question.

For all of the foregoing reasons, based upon the evidence of record, we find the fair market value of the tractor to be $38,-000.00. In that, as indicated *supra,* there are no liens against the tractor other than the plaintiff's lien, and the plaintiff's lien was established to be $31,157.71, the debtors have $6,842.29 equity in the tractor. We further find that this represents a sufficient equity cushion to provide adequate protection of the plaintiff's secured interest in the tractor. We are also cognizant of the fact that Mr. Attinello needs the tractor in order to resume his employment as a long-haul independent truck driver and to

attempt to fund sufficiently a Chapter 13 Plan for the presumed benefit of all of the creditors of the debtors, including the plaintiff.

Therefore, we conclude that the debtors are entitled to turnover of the tractor from the plaintiff pursuant to § 542(a) of the Bankruptcy Code.

Finally, based upon the foregoing, we must deny the plaintiff's request for relief from the automatic stay under both § 362(d)(1) and § 362(d)(2) of the Bankruptcy Code. As to § 362(d)(1), we shall deny relief because we have already concluded that the debtors have provided adequate protection of the plaintiff's interest in the tractor. Also, no other "cause" exists to justify relief from the stay. With regard to § 362(d)(2), our finding that the debtors have equity in the tractor precludes relief under this provision.

Therefore, an order will be entered requiring the plaintiff to return possession of the tractor to the debtors forthwith and denying the plaintiff its requested relief from the automatic stay.