In re Ben Alfred CARLSEN, Jr., aka Ben A. Carlsen, Jr., Debtor.

Ben Alfred CARLSEN, Jr., aka Ben A. Carlsen, Jr., Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. LA 85–10591–GM. Adv. No. LA 85–2258–GM.

United States Bankruptcy Court, C.D. California.

Aug. 15, 1986.

Richard I. Kohn, Hagen & Hagen, Encino, Cal., for plaintiff Carlsen.

Mason C. Lewis, Office of the U.S. Atty., Los Angeles, Cal., for defendant I.R.S.

## MEMORANDUM OF OPINION

GERALDINE MUND, Bankruptcy Judge.

This Complaint was filed by the debtor alleging a violation of the automatic stay provision of 11 U.S.C. § 362 by the defendant, the Internal Revenue Service. The debtor seeks damages, the turnover of property to the estate pursuant to 11 U.S.C. § 542(a), and injunctive relief restraining the Internal Revenue Service from further levies on the debtor's salary.

The following constitutes findings of fact and conclusions of law as required by bankruptcy rule 7052. This is a core proceeding, 28 U.S.C. § 157(b)(2)(F), (I). The facts of this case are undisputed and are as follows:

On July 26, 1985, the Internal Revenue Service presented to Carlsen's employer, the Los Angeles County Auditor, Controller's Office, a notice of levy on wages, salary, and other income. On July 31, 1985, Carlsen filed a Chapter 7 petition. The monthly payroll checks issued by the County between August 15, 1985 and August 31, 1985 covered wages earned by its employees during the preceding month. On August 29, 1985, the Internal Revenue Service received a check from the County dated August 15, 1985, in the amount of $1,218.16.

It is undisputed that prior to Carlsen's payday of August 15, 1985, the Internal Revenue Service was aware of the pendency of the bankruptcy case, acknowledged the existence of the bankruptcy, and believed that the levy could still go forward because the property levied upon was wages earned prior to the bankruptcy. On August 29, 1985 the Internal Revenue Service issued to the County a release of levy on wages, salary, and other income.

There are essentially two issues before this Court:

Whether Carlsen's wages held by his employer on the date of filing, which were earned pre-petition and subject to the Internal Revenue Service's pre-petition levy, are property of the estate. If they are property of the estate, did the Internal Revenue Service violate the automatic stay of 11 U.S.C. § 362?

The Internal Revenue Service's argument that the wages are not property of the estate appears to be two-fold. First, the Internal Revenue Service contends that the wages were earned pre-petition and the mere issuance of the payroll check post-petition should not deprive the wages of the character as pre-petition earnings. Second, they claim that the Internal Revenue Service's pre-petition levy divested the debtor of any interest, equitable or otherwise, in the wages and therefore the wages cannot be characterized as property of the estate under 11 U.S.C. § 541.

Judge David L. Crawford, Bankruptcy Judge from Nebraska, confronted a situation similar to the facts and issues at hand in the case of *Matter of Cudaback*, 22 B.R. 914 (Bankr.Neb.1982). In *Cudaback*, on January 28, 1981, the Internal Revenue Service served a notice of levy on Cudaback's employer. On February 2, 1981, Cudaback filed a petition in bankruptcy under Chapter 13. On February 9, 1981, after receiving a Release of Levy with the effective date of February 2, 1981, Cudaback's employer forwarded a check for $483.72 to the Internal Revenue Service. The check represented wages earned by Cudaback during the pay period from January 11 through the 24th, less wage withholdings and less an amount of wages exempted from levy by statute. The Court, confronted by the issue of whether the wages were property of the estate, examined the language of § 541.

Under § 541, property of the estate includes " ... all legal or equitable interest

of the debtor in property as of commencement of the case." Noting that the United States Supreme Court has concluded that title to property seized or levied upon does not pass simply by virtue of the levy or seizure, the Court held that notwithstanding the Internal Revenue Service levy, the wages earned by Cudaback in the hands of her employer on the date of the petition are something she retains a legal or equitable interest in and therefore are property of the estate. *Cudaback, supra,* at 918 (*citing, Bennett v. Hunter,* 9 Wall. 326, 76 U.S. 326, 19 L.Ed. 672 (1869)).

Both parties submitted trial memoranda, setting forth their legal arguments, but citing absolutely no authority for them. The Court has had to guess on what basis the I.R.S. could possibly have argued that its pre-petition levy divests the debtor of any interest in the wages so that the wages are not property of the estate. It cites no authority for this position and fails to advise the Court of the *Cudaback* opinion, which is directly to the contrary.[1]

It appears possible that the Internal Revenue Service relied on *Riddervold v. Saratoga Hospital,* 647 F.2d 342 (2d Cir.1981), and its progeny.[2] Although *Riddervold* was a preference case, the theory of whether or not a garnishment transfers property of the debtor or merely creates a lien on it is the same issue as is raised in this case. The *Riddervold* Court based its decision on New York state law, which holds that the execution of a garnishment terminates all

property interest that a debtor could obtain in his future wages. *Id.* at 346, *See also Matter of Coppie,* 728 F.2d 951, 952 (7th Cir.1984). The theory discussed in *Riddervold* is commonly called the "Continuing Levy Theory" and the Internal Revenue Service is arguing that it applies to divest the debtor and the estate of any interest in the wages.

However, "if it makes sense at all, the 'continuing levy' concept offered in *Riddervold* operates only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights in future wages." *In re Perry,* 48 B.R. 591, 596 (Bankr.M.D.Tenn.,1985). This is simply not the case in California. Under California law, the service of an Earnings Withholding Order merely creates a lien upon the earnings and does not divest the debtor of all legal and equitable rights in the wages.[3] Accordingly, the "continuing levy" theory is simply not applicable in California.

Consequently, this Court concurs with the conclusion in *Cudaback.* It is an absurd argument under California law that the service of notice of levy on wages deprives the debtor herein of *all* legal or equitable interest in the wages. In light of the foregoing analysis, this Court holds that the wages held by the debtor's employer on the date of the filing of this Chapter 7 petition were property of the

---

1. The Rules of Professional Conduct do not require an attorney to specifically reveal to the Court authority which is contrary to its position. However, good legal practice and the requirement under Federal Rule of Civil Procedure 11 (incorporated in the bankruptcy rules under Rule 9011) require that an attorney make reasonable inquiry into existing law and not interpose arguments that cause delay in that they are not warranted by existing law. If the Court had reason to believe that the Internal Revenue Service intentionally failed to justify its legal theories through existing case law and did not reveal contra opinion, which clearly applies in California, this Court would sanction the attorneys involved under Rule 9011. However, there is no reason to believe that the failure to give authority was based on anything other than "sloppy lawyering" or overwork.

2. Cases following *Riddervold: Matter of Coppie,* 728 F.2d 951 (7th Cir.1984); *In re Certain,* 30 B.R. 379 (Bankr.D.Conn.1983).

3. California Code of Civil Procedure § 706.029 provides:

   Service of an earnings withholding order creates a lien upon the earnings of the judgment debtor that are required to be withheld pursuant to the order and upon all property of the employer subject to the enforcement of a money judgment in the amount required to be withheld pursuant to such order. The lien continues for a period of one year from the date the earnings of the judgment debtor become payable unless the amount required to be withheld pursuant to the order is paid as required by law.

estate and, thus, became subject to the automatic stay of 11 U.S.C. § 362.

Having found that the automatic stay provision of 11 U.S.C. § 362 applies, the next issue is whether the Internal Revenue Service violated the stay. There are two possible violations of the stay which must be considered. First, did the I.R.S. release its levy within a reasonable period of time after notice of the bankruptcy?

11 U.S.C. § 362(a) provides:

... a petition ... operates as a stay applicable to all entities, of—

(3) any act to obtain possession of property of the estate or on property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

■ In order to give effect to § 362, one of the most fundamental debtor protections provided by the bankruptcy law, positive action on the part of the creditor may be required in order to *halt* the continuation of the garnishment. *In re Baum*, 15 B.R. 538, 541 (Bankr.E.D.Va.1981); *In re Elder*, 12 B.R. 491, 494–495 (Bankr.M.D. Ga.1981). *In re O'Connor*, 42 B.R. 390, 392 (Bankr.E.D.Ark.1984). "It is the creditor's responsibility to stop the downhill snowballing of a continuing garnishment." *Baum, supra*, at 541. Accordingly, the creditor must release the levy within a reasonable period of time after notice of the bankruptcy and failure to do so is a violation of § 362. *See, In re Baum*, 15 B.R. 538 (Bankr.E.D.Va.1981); *In re Elder*, 12 B.R. 491 (Bankr.M.D.Ga.1981). What is a reasonable period of time within which to release the levy? There is no concrete time period; what is reasonable under the cir-

cumstances must be determined on a case by case basis.

■ It is incumbent upon the creditor to release its lien without delay as soon as it is aware of the bankruptcy and of the legal effects of that bankruptcy. Naturally this Court would not chastise a creditor for seeking legal counsel before it acts. But any delay in obtaining that legal advice is unwarranted and a violation of the stay.

■ Turning to the facts of the present case, Carlsen filed bankruptcy on July 31, 1985. It is undisputed that the I.R.S. was aware of the pendency of the bankruptcy prior to Carlsen's payday of August 15, 1985 and did not release its levy on wages until August 29, 1985. While this time frame is not necessarily unreasonable, it appears from this case that the I.R.S. believed that they were entitled to the wages earned during July and therefore kept the levy in place to make sure that they would receive them. The Court has no specific knowledge on this, as there has been no testimony or declarations as to the intent of the I.R.S. However, if the delay in releasing the levy was intentional (rather than merely administrative because the paperwork was making its way through channels), then the delay was a violation of the automatic stay.

Second, did the I.R.S., without any affirmative action to obtain the wages, violate the stay by receiving and keeping the wages post-petition, after actual notice of the bankruptcy? The I.R.S. contends that although it had actual notice of the bankruptcy, it performed no affirmative act to obtain possession of the wages, and merely received, post-petition, a check mailed to it by the county.

■ The I.R.S. clearly had a duty under 11 U.S.C. § 542 to turn over to the trustee property of the estate, even if the debtor may exempt that property.[4] Posi-

---

**4.** 11 U.S.C. § 542 provides:

(a) Except as provided in subsection (c) or (d), an entity, other than a custodian in possession, custody, or control, during the case of property

that the trustee may use, sell, or lease under section 363 of this title or lease under section 363 of this title, or that the debtor may exempt under Section 522 of this title, shall deliver to

tive action on the part of the creditor is required not only to halt the continuation of the garnishment, but to turn over to the trustee sums that it received from the garnishee. *Elder,* supra, at 495.

 After learning of the bankruptcy, the I.R.S. had the choice of returning the check to the County, for it had received it in violation of the automatic stay, or turning the money over to the trustee as property of the estate. The failure of the I.R.S. to take either of these actions is in violation of both the automatic stay and of the turnover requirements of the Bankruptcy Code.

The I.R.S. contends that it is entitled to adequate protection before it has to turn over the property of the estate. Once again, it cites no authority for this proposition. The Court assumes that the I.R.S. is claiming rights of setoff. The Court does not see how the setoff provisions of § 553 can apply, for the property in question did not come into the possession of the I.R.S. until after the filing of the bankruptcy. They therefore are not entitled to a secured claim under § 506(a) and cannot claim adequate protection for use of the cash collateral pursuant to § 363. Once again the I.R.S. argument appears to be without legal justification and no statute or cases are cited in support thereof.

The remedy available to a debtor for a creditor's violation of the automatic stay is contained in 11 U.S.C. § 362(h) which provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, if appropriate circumstances, may recover punitive damages.

The Internal Revenue Service is hereby ordered to turn over the funds in question to the debtor with interest from August 29, 1985. Although this property is clearly property of the estate, it has been exempted and the trustee has since abandoned any interest in it. Therefore, turnover to the

the trustee and account for, such property or the value of such property, unless such property

debtor is appropriate. Furthermore, the Internal Revenue Service shall pay debtor's attorney the actual amount of their fees incurred in this case.

 The debtor has also prayed for an award of punitive damages, however, the facts do not justify imposition of punitive damages because of the vague record as to the intent and knowledge of the I.R.S. employees involved, and in view of the fact that the debtor can be made whole by virtue of the return of the monies and the award of attorneys' fees and costs.

An order is entered simultaneously herewith.

is of inconsequential value or benefit to the estate.