**In re Sherre Lynn SEAY aka Sherre Lynn May aka Sherre Lynn May Seay, Debtor.**

**Bankruptcy No. 88–B–06699–A.**

United States Bankruptcy Court, D. Colorado.

Feb. 16, 1989.

Richard K. Blundell, Greeley, Colo., for debtor.

Robert C. Abelman, Denver, Colo., pro se and for creditor.

**42**

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtor's Application for Order to Show Cause and the Response of Robert C. Abelman thereto. Debtor seeks to have the Creditor (Recovery Collection Services, Inc.) and counsel for the Creditor (Robert C. Abelman) each held in contempt of Court, and requests a finding by the Court that Creditor's counsel made a "deliberate, knowing and intentional" violation of the automatic stay provisions of the Bankruptcy Code.

The Creditor's attorney concluded garnishment proceedings after the Debtor filed her Petition in bankruptcy. The Debtor alleges that such conduct was in violation of 11 U.S.C. § 362(a). The Creditor denies such a violation. The Creditor maintains that (1) the state court garnishment procedure had progressed so far that the garnisheed funds were *no* longer property of the Debtor or the estate when the Petition was filed, and (2) Creditor's conduct was merely ministerial in obtaining the actual funds from the garnishee defendant, Union Colony Bank, and did not constitute an "act" in violation of the automatic stay.

The central issue before the Court is determining whether or not the bank account funds garnisheed by the Creditor were or became an asset of the Debtor or Debtor's estate at the time the Debtor filed her Petition in bankruptcy. If the funds *were* an asset of the estate, then the second issue to consider is whether or not Creditor's counsel's conduct violated the automatic stay provisions of the Bankruptcy Code. If they were *not* an asset of the estate, then Creditor's collection efforts would not have constituted a violation of the automatic stay provisions of the Code.

### Background and Findings of Fact

1. On January 27, 1988 the Jefferson County Court ("County Court") entered a default judgment against the Debtor in the principal sum of $463.11, plus costs and interest, in Civil Action No. 88–C–524. Recovery Collection Services, Inc., through its attorney Robert Abelman, attempted to effect collection on the judgment.

2. On May 6, 1988 the Clerk of the County Court issued a Writ of Garnishment to the Union Colony Bank of Greeley, Colorado, in the sum of $532.42.

3. On May 12, 1988 the Weld County Sheriff served the Writ of Garnishment upon the Union Colony Bank and the Bank removed, or debited, the sum of $532.42 from the Debtor's bank account.

4. Between May 12, 1988 and May 17, 1988, the Debtor was notified by the Union Colony Bank that the Writ of Garnishment had been served.

5. On May 17, 1988 the Debtor timely filed a Claim of Exemption with the County Court in accordance with applicable state law. (C.R.S. § 13–54–104). The County Court scheduled a hearing for May 18, 1988.

6. On May 18, 1988 the County Court conducted a hearing on the Debtor's Claim of Exemption, at which hearing the Debtor testified. At the conclusion of the hearing, the County Court entered an Order denying the Debtor's Claim of Exemption and directing that the Union Colony Bank pay the proceeds of the garnishment over to the Creditor.

7. On May 20, 1988 the Debtor filed her Petition under Chapter 7 of the Bankruptcy Code. Debtor subsequently converted her case to a Chapter 13 proceeding on August 23, 1988.

8. On May 20, 1988, immediately after the filing of the aforementioned action, Debtor provided notice of the filing to Creditor and Creditor's counsel by personally hand-delivering to Creditor's counsel a copy of a Notice of Automatic Stay obtained from the Bankruptcy Court.

9. After receiving the notice of Debtor's bankruptcy, Creditor's counsel communicated with Bank personnel and persuaded the Bank to transfer the subject funds to him.

## Opinion and Order

The first issue of what is, or is not, property of the Debtor's estate is generally controlled by 11 U.S.C. § 541. It includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The definition of what is, and what is intended to be, property of the estate is broad and encompassing.

> "The specific meaning of the reference in § 541(a)(1) to 'all legal or equitable interests of the debtor in property' is also easily discerned. Even on its face, § 541(a)(1) is all-encompassing, and Congress meant for it to be construed commensurately."
>
> *In re Kaiser Steel Corp.*, 80 B.R. 216, 220 (Bankr.D.Colo.1987); (*citing, In re Mortgageamerica Corp.*, 714 F.2d 1266, 1274–75 (5th Cir.1983)); *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966).

While a determination of what actually constitutes property of the estate is ultimately a federal question, bankruptcy courts will, when necessary, look to state law for assistance in deciding the issue. *In re Loughnane*, 28 B.R. 940, 942 (D.Colo. 1983).[1]

Significantly, "property of the estate ... is intended to include any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 2313 (n. 9), 76 L.Ed.2d 515 (1983).[2] Several of these Code provisions bring into the estate property held or controlled by others, including creditors, and property in which the debtor did not have a possessory interest when the bankruptcy proceedings commenced. *Id.* at 103 S.Ct. 2313–2314. In *Whiting Pools, supra,* the Internal Revenue Service had levied on and seized personal property of the debtor in order to satisfy its tax lien, prior to debtor's Chapter 11 petition being filed. After the debtor filed Chapter 11, the United States Supreme Court approved Debtor's recovery of the seized assets by way of a turnover order pursuant to 11 U.S.C. § 542(a).[3] The United States Supreme Court concluded in *Whiting Pools* that the Debtor estate, or "reorganization estate," also includes "property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.* at 103 S.Ct. 2315. Accord, *In re Carlsen*, 63 B.R. 706 (Bankr.C.D.Ca.1986).

The key element in *Whiting Pools*, which is controlling, indeed decisive, of the issues in this case is the court's ruling that *only when ownership of property seized by a creditor is transferred from the debtor* is it then not an asset of the estate and not recoverable as an asset of the estate.

> [Tax lien, levy, or seizure] provisions do not transfer ownership of the property to the IRS.
>
> The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, ... are special procedural devices available to the IRS to protect and satisfy its liens ... and are analogous to the remedies available to private secured creditors. [Citations omitted.] They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.
>
> *Whiting Pools, supra* at 103 S.Ct. 2316.
>
> Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale.

---

1. Section 541(a) (11 U.S.C. § 541(a)) has been characterized as defining *what* interests of a debtor may become property of the estate while state law or other nonbankruptcy law defines the *scope and existence* of that interest. *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986).

2. *See,* Title 11, Sections 329(b), 363(n), 542–550, and 723.

3. "Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).

*Id.* at 103 S.Ct. 2317.

■ The question thus arises in the instant case, when did the Debtor's ownership rights to the garnisheed funds terminate—or become irrevocably severed—so that the funds were not and could not become an asset of the estate?

Garnishment rights and proceedings in Colorado are governed, generally, by statute, C.R.S. § 13–54.5–101, *et seq.*, and rules prescribed by the Colorado Supreme Court, C.R.C.P. 103. As in this case where the County Court has jurisdiction, garnishment is pursuant to C.R.C.P. 403, a procedural rule parallel to that in C.R.C.P. 103.[4] In a garnishment, pursuant to C.R.C.P. 403(2)(h), the disbursement of garnisheed funds to a judgment creditor is effected "without further application or order ..." after compliance with C.R.C.P. 403(2)(g) or: (1) a showing that the garnishee defendant is indebted to the judgment debtor, and (2) entry of a court judgment against the garnishee defendant for the use of the judgment creditor (garnishment judgment). *See,* C.R.S. § 13–54.5–109; C.R.C.P. 403(2) and (6).[5]

*Prior* to entry of the garnishment judgment, any objections or claims of exemption to the garnisheed property may be asserted by the debtor and they must be heard and determined by the court. C.R.C.P. 403(2)(g)(2), (4), and (6)(c).[6] So too,

any other persons who claim an interest in the garnisheed funds may intervene and assert their claims and rights prior to the entry of the garnishment judgment.[7] After such a hearing on objections, claims of exemption, or intervenor's claims, the court is to enter its "order or judgment" respecting any such objections, claims of exemption, intervenor's rights, and the disposition of garnisheed funds.[8] Such garnishment order or judgment after the exemption hearing is "a final judgment for the purposes of appellate review." C.R.C.P. 403(6)(c)(4).[9]

It appears from the statutory language and applicable rules that the Debtor's ownership rights in property terminated—or became irrevocably severed—after hearing and entry of the Court Order denoted the garnishment judgment. Statutory language must be given effect and a court cannot adopt a different construction absent clear legislative intent to the contrary. *In re Storage Technology Corp.,* 48 B.R. 862, 865 (D.Colo.1985).

Case law in Colorado supports this conclusion. The Colorado Supreme Court decided, *en banc,* in *Nolan v. District Court, Second Judicial Dist.,* 195 Colo. 6, 575 P.2d 9 (1978), that until the period of time for claiming exemptions has expired, and concurrently the time for intervention by third parties has expired, "the garnishment proceeding was not 'determined'."[10]

[T]he exemption procedure is, by statutory command, an integral part of any garnishment proceeding. A garnishment

---

4. Principal provisions of the Rules of Civil Procedure for the District Court and County Court Rules closely follow, and sometimes expressly restate, the statutory language governing garnishment. This opinion recites and tracks the applicable rules with references in the footnotes to each corresponding statutory provision.

5. The *Clerk* of the Court may summarily enter the garnishment judgment if garnishee admits indebtedness to the judgment debtor, service is proper, and no claim of exemption is timely filed. C.R.C.P. 403(2)(g). In the instant case, a claim of exemption *was* filed and the Court entered the garnishment judgment.

6. *See,* C.R.S. §§ 13–54.5–108 and 109, and C.R.S. §§ 13–55–101 and 104. This also assumes absence of a traverse of garnishee's answer by the

judgment creditor, or others. *See,* C.R.C.P. 403(8), Traverse of Answer (All Forms of Garnishment).

7. C.R.C.P. 403(9), "Intervention (All Forms of Garnishment)."

8. *See,* C.R.S. § 13–54.5–109 and C.R.S. § 13–55–105; C.R.C.P. 403(6)(c)(4).

9. *See,* C.R.S. § 13–54.5–109 and C.R.S. §§ 13–55–106 and 110.

10. *Nolan v. District Court, supra,* is a pre January 1, 1985 decision, the date on which current garnishment rules became effective. It is, however, the most recent and applicable decision on the subject from reported cases in Colorado.

proceeding may not be considered "determined" until decisions regarding the rights of parties to the action can be made, and nothing but ministerial functions remain to be done. [Citations omitted.]

Until the time for filing an exemption expired, the garnishment proceeding was not determined.

*Nolan v. District Court, supra* at 11.

By implication, the Supreme Court holds that *after* the "determination" of debtor's exemptions, objections and intervenor's rights, then the judgment as to relative rights to the garnisheed funds is final and conclusive. The debtor's rights to garnisheed funds are then adjudicated with finality.

"The rights and liabilities [of the respective parties] are to be determined as of the date of the garnishment." *State v. Elkins,* 84 Colo. 409, 414, 270 P. 875 (1928).[11] In the instant case, the garnishment was served and was effective as of May 12, 1988; it was final and conclusive as of May 18, 1988 when the County Court ordered turnover of the funds to the judgment creditor.

This Court concludes that as of the moment the state court completes its statutory hearing, determines the correlative rights of parties to garnisheed funds, and orders turnover of funds to the respective parties, then the debtor's ownership rights to the funds are fixed with finality. If the state court, as here, determines the debtor has no right to the funds and orders disbursement to the judgment creditor, then

debtor's rights are terminated; they are irrevocably severed.

At that point, debtor has no right, title or interest—no ownership—in the garnisheed funds sufficient to give the subsequently created bankruptcy estate any rights to the funds.[12] The garnisheed funds are not, and cannot then be made, property of the bankruptcy estate.[13]

■ This threshold determination necessarily leads to the conclusion that since the garnisheed funds were not property of the estate or of the Debtor after May 18, 1988, in this case, the Creditor's acts to receive the funds on May 20, 1988 were not a violation of the Bankruptcy Code. Creditor's collection efforts against third parties, or against property *not* of the Debtor's estate, is not a violation of the automatic stay provisions of the Bankruptcy Code.[14] *See, In re Watson,* 78 B.R. 232 (9th Cir.BAP 1987); *Skies Unlimited, Inc. of Colorado v. King,* 72 B.R. 536 (Bankr.D. Colo.1987).

Accordingly, the Court orders that Debtor's Application to hold Creditor and Creditor's counsel in contempt of Court, or to make a finding that counsel acted in knowing and willful violation of the automatic stay provisions of the Bankruptcy Code, is denied. Attorney's fees, or other sanctions, are not assessed.

---

**11.** The nature and extent of the garnishment plaintiff's rights to garnisheed funds is perhaps best stated in *State v. Elkins, supra* 84 Colo. at 414, 270 P. 875: "If the judgment against the garnishee is good, it operates as a statutory assignment of the debt, and clothes the plaintiff with all the debtor's rights [to the garnisheed funds]." *See, Montgomery v. Whitehead,* 40 Colo. 320, 324, 90 P. 509 (1907).

**12.** The funds received by the judgment creditor are probably a preference pursuant to 11 U.S.C. § 547, but are not avoidable or recoverable by the Trustee due to subsection (c)(7) of Section 547.

**13.** The right to timely appeal the garnishment judgment is a right of the debtor or estate and may be exercised by the appropriate party.

**14.** This Court is aware of the many cases which require a creditor to cease all collection activity upon the filing of a bankruptcy petition and to take *affirmative acts* to return collection procedures to the status *quo ante;* to return funds to the debtor. All of those cases, however, involve collections which have *not* progressed to the point that ownership rights of the debtor had been extinguished. *See,* e.g., *In re Carlsen,* 63 B.R. 706 (Bankr.C.D.Ca.1986); *Matter of Thacker,* 24 B.R. 835 (Bankr.S.D.Ohio 1982); *Matter of Georgia Steel, Inc.,* 25 B.R. 781 (1982).