In re Amelia J. CARDILLO, d/b/a Cutting Edge and Tanning Loft, Debtor.

Amelia J. CARDILLO, d/b/a Cutting Edge and Tanning Loft, Plaintiff,

v.

ANDOVER BANK and New Dartmouth Bank, Defendants.

Bankruptcy No. 93–13524–MWV.
Adv. No. 93–1199–MWV.

United States Bankruptcy Court,
D. New Hampshire.

June 3, 1994.

Jay Johnson, Schrieber & Associates, Danvers, MA, for debtor.

Mark J. Sampson, Asoian, Tully & Gilmna, Andover, MA, for Andover Bank.

Lawrence Sumski, Trustee, Amherst, NH.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH, for U.S. Trustee.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

On May 18, 1994, two matters came before the Court in this chapter 13 case. First, the Court took testimony and heard arguments of counsel on Andover Bank's motion to dismiss the debtor's chapter 13 case or alternatively convert it to a case under chapter 7. Second, the Court heard argument on the debtor's motion for summary judgment on her complaint for avoidance of lien and turnover of funds against Andover Bank. For the reasons set out below, the Court denies Andover Bank's motion to dismiss or alternatively convert to chapter 7 and denies debtor's motion for summary judgment and dismisses the section 547 preference action for lack of standing.

### FACTS

Both of the matters before the Court arise out of the same series of events concerning the debtor and Andover Bank ("Andover"). On April 26, 1988, the debtor, Amelia Cardillo, and Charles Cardillo (not a debtor) entered into an Equity Credit Line Agreement with Andover Savings Bank (now Andover) in the amount of $70,000.00. This obligation was evidenced by a note and secured by a second mortgage on property of the debtor located at 55 Cox Lane, Methuen, Massachusetts. These agreements were subsequently modified by an agreement dated March 19, 1992, and signed by the debtor. Paragraph 15 of the second mortgage given by the debtor to Andover is, in essence, a "due on sale clause" under which the debtor had the obligation to pay off the debt to Andover upon transfer of the property securing the obligation.

On May 28, 1993, the debtor deeded the property subject to the second mortgage to a third party for the sum of $172,000.00. The debtor testified that she informed Andover prior to the closing date of the proposed sale in a telephone call concerning her credit rating. Andover's records did not reflect knowledge of the transaction other than an inquiry by a title company on or about June 1, 1993. The debtor also testified that she informed the closing agent at the closing of the second mortgage and was informed by the closing agent that the mortgage had been discharged. The debtor further testified that she was not represented by counsel in this transaction and relied on the attorneys or closing agents for the buyer. In any case, the closing took place and the debtor received the balance of the proceeds of the sale after the payment of costs and the first mortgage. The amount she received was approximately $59,000.00. No payment was made to Andover and the mortgage apparently still remains on the property.

Mr. Cabera, an assistant vice president of Andover, testified that he first found out about the sale on June 25, 1993, when he read about it in the newspaper. At that point, he contacted the debtor and requested that the proceeds of the sale be paid to Andover, but payment was not forthcoming. The debtor testified that she used the proceeds to pay other debts, some of which were at a higher interest rate. It appears that most of the proceeds were spent prior to June 25, 1993, when Andover found out about the sale, although the record indicates the debtor had a gambling loss of $5,000.00 on July 4, 1993. The debtor testified that, although she did not pay the proceeds of the sale to Andover, she knew she owed money to Andover and continued making regular

payments until December 1993 when Andover attached her checking account.

On August 31, 1993, counsel for Andover made formal demand on the debtor and on December 10, 1993, brought a lawsuit in the Rockingham County Superior Court against the debtor. In connection with this lawsuit, Andover attached the debtor's checking account in the New Dartmouth Bank which, at that point, contained $7,500.00. On December 23, 1993, the debtor filed a petition under chapter 13 of the Bankruptcy Code and initiated her adversary proceeding to recover the $7,500.00 under sections 542 and 547 of the Bankruptcy Code. At a preliminary hearing, this Court allowed the debtor use of $2,500.00, which was necessary for her business, so that $5,000.00 is still in dispute.

Andover objected to the debtor's adversary proceeding and, subsequently, on April 22, 1994, moved to dismiss or convert the chapter 13 case. Both the objection and the motion to dismiss are grounded on the premise that the prepetition actions of the debtor evidence bad faith.

### DISCUSSION

I. *Motion to Dismiss or Convert Pursuant to Section 1307 of the Bankruptcy Code*

■ Andover, relying heavily on the case *In re Love*, 957 F.2d 1350 (7th Cir.1992), argues that the debtor's pre and postpetition activities evidence "bad faith in filing the instant bankruptcy proceeding and are an abuse of the spirit and purpose of chapter 13," (Motion at ¶ 26), and for that reason the case should be dismissed or alternatively converted to chapter 7. This Court disagrees.

■ Section 1307(c) of the Bankruptcy Code provides that, upon request from a party in interest, the Court may dismiss a case or convert a case under chapter 13 "for cause, including—." That section then goes on to give ten grounds for conversion or dismissal, none of which have been alleged by Andover. This Court acknowledges that a finding of "lack of good faith is sufficient

cause for dismissal under chapter 13." *In re Love*, 957 F.2d at 1354. However, this Court further notes that:

1. The burden is on Andover to show lack of good faith. *Id.* at 1355.

2. There is no presumption of lack of good faith. *Id.*

3. Several courts have stated that dismissal for lack of good faith should only be in extraordinary circumstances. *Id.* at 1356.

4. The Court should be more reluctant to dismiss a case under section 1307 than deny confirmation under section 1325.[1]

Andover's primarily allegation of bad faith is that the debtor, having an obligation to pay the proceeds of the sale to Andover, took and spent the proceeds and did not make payment to Andover. The debtor's testimony is that she advised Andover of the sale; advised the closing agent of the mortgage; and was informed that the mortgage had been released. The debtor's further testimony is that she was not represented by counsel and believed that Andover had made a mistake. She testified that she believed she still owed the money and, in fact, continued making regular payments to Andover and was current until Andover attached her bank account in December 1993. As to the use of the majority of the proceeds received by the debtor, she testified that she paid other debts that made business sense to her. Other than the gambling debt, this is not controverted. Finally, the evidence showed that the proceeds were mainly dissipated before the debtor was contacted by Andover on June 25, 1993. Based on this testimony, the Court cannot find that the debtor's prepetition actions evidence a lack of good faith sufficient to warrant dismissal or conversion under section 1307.

As a further indication of the debtor's lack of good faith, Andover alleges that the debtor filed chapter 13 because she knew the Andover obligation would be the subject of a nondischargeability claim under chapter 7.

---

1. *Id.* at 1356. The Court notes that, other than *Love,* the cases relied upon by Andover are section 1325 cases rather than section 1307 cases: *In re Smith*, 848 F.2d 813 (7th Cir.1988); *Metro Employees Credit Union v. Okareeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030 (6th Cir.1988); *Downey Savings and Loan Assoc. v. Metz (In re Metz)*, 820 F.2d 1495 (9th Cir.1987); *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986).

Unlike the Internal Revenue Service obligation in *Love,* it is not clear here that the obligation would be nondischargeable under section 523 of the Bankruptcy Code. Andover also alleges as evidence of lack of good faith that the debtor offered to settle the matter, both pre and postpetition, which this Court discounts entirely, and that Andover holds approximately 95% of the debt. However, $11,000.00 of the amount owed is pursuant to a separate loan and does not arise out of these events and, in fact, lowers that 95% figure.

It is this Court's opinion that the remaining factual allegations go more properly to an objection to confirmation than a motion to dismiss or convert. Based on the totality of the circumstances evidenced by the record before this Court, the Court finds that Andover has not met its burden under section 1307 and its motion to convert or dismiss is, therefore, denied.

## II. *Debtor's Motion for Summary Judgment*

### A. *First Cause of Action—Section 547*

■ At the close of trial, the Court indicated that it believed that the debtor had alleged all the elements of a preferential transfer which were not controverted by Andover. However, on further reflection, the Court, on grounds not raised by Andover, finds that it must deny the debtor's first cause of action on the ground that a chapter 13 debtor does not have standing to bring an avoidance action under section 547 of the Bankruptcy Code.

■ Section 547(b) provides, "[e]xcept as provided in subsection (c) of this section, the *trustee* may avoid any transfer of an interest of the debtor in property—" (emphasis added). Nowhere in chapter 13 is a debtor given the powers of a trustee.[2] Section 1303 of the Bankruptcy Code gives a debtor certain powers of a trustee under section 363 of the Bankruptcy Code, but these only relate to the use, sale or lease of property. Although some courts have found that a chapter 13 debtor does have the avoiding powers,

especially when the asset avoided goes to the benefit of creditors, this Court joins the significant and growing number of courts that have held, except to enhance the debtor's exemptions under section 522, the chapter 5 avoiding powers of a trustee are not available to a chapter 13 debtor. Keith M. Lundin, *Chapter 13 Bankruptcy,* § 3.38 at 3–32, 3–33 & n. 43 (1993).

Since this Court finds that the debtor does not have standing under section 547 of the Bankruptcy Code, the motion for summary judgment on the debtor's first cause of action is denied and the first cause of action is hereby dismissed.

### B. *Second Cause of Action—Section 542*

■ Section 1303 of the Bankruptcy Code gives the chapter 13 debtor the rights and powers of a trustee under section 363(b), (d), (e), (f) and (*l*). Section 363(b) gives the debtor the right to use, sell or lease property of the estate. There is no question that the monies subject to the Andover attachment are property of the estate. *See* 11 U.S.C. § 541. Since the funds are property of the estate and subject to the "use, sale or lease" by the debtor, they are subject to being turned over pursuant to section 542(a), subject to Andover's interest in the funds, i.e., its attachment. Section 363(e) provides for adequate protection to an entity that has an interest in property used, sold or leased or to be "used, sold or leased." Clearly, Andover has an interest that is entitled to adequate protection by the debtor. Based on the above, this Court denies the motion for summary judgment on the debtor's second cause of action, and the adversary proceeding will go forward on the issue of adequate protection for the interests of Andover in the funds attached.

Separate orders will issue on the debtor's motion for summary judgment in the adversary proceeding and the motion of Andover Bank to dismiss the debtor's chapter 13 case.

---

**2.** Compare this to section 1107 of the Bankruptcy Code, which specifically gives the chapter 11

debtor in possession the powers of a trustee.