In re Jerry **ARTURO RODRIGUEZ** and Maria Teresa Rodriguez, Debtors.

Maria Teresa Rodriguez and Jerry Arturo Rodriguez, Plaintiffs,

v.

First American Bank, S.S.B. and JLM Financial I, Ltd., Defendants.

Bankruptcy No. 01–11177–RLJ–13.
Adversary No. 02–1001.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

May 29, 2002.

W. Timothy Ladyman, Abilene, TX, for plaintiff.

William Jeff Paradowski, Bryan, TX, Aubyn Keith Shettle, Jr., Dallas, TX, for defendants.

### *MEMORANDUM OPINION*

ROBERT L. JONES, Bankruptcy Judge.

This adversary was brought by Maria Teresa Rodriguez and Jerry Arturo Rodriguez ("Debtors") against First American Bank ("American") and JLM Financial Ltd. ("JLM"), seeking the turnover of gar-

nished funds claimed exempt by Debtors. In conjunction with the turnover action, the court has before it the Debtors' motion seeking avoidance of an alleged lien held by JLM against the garnished funds.

This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2). This Memorandum Opinion contains the court's findings of fact and conclusions of law. Fed. R.Bankr.P. 7052 and Fed.R.Bankr.P. 9014.

### Facts and Contentions of the Parties

The parties have stipulated to the relevant facts and issues. JLM is a judgment creditor of Debtors. After obtaining a state court judgment against Debtors, JLM served a writ of garnishment on American, Debtors' bank, on November 2, 2001. Debtors were served on November 10, 2001. American held, and continues to hold, $8,364.51 ("garnished funds") on behalf of Debtors. On November 14, 2001, JLM and American submitted a proposed agreed judgment of garnishment to the state court. This agreed judgment awarded $7,864.51 from the garnished funds to JLM, and $500 from the garnished funds to American for attorney's fees. On November 16, 2001, Debtors filed a pro se Motion to Dissolve Writ. On November 21, 2001, the state court signed the proposed agreed judgment between JLM and American. Debtors' Motion to Dissolve Writ was set for hearing on December 19, 2001. However, the Debtors' bankruptcy filing on December 18, 2001, halted the state court's consideration of the Debtors' motion.

Debtors claim the garnished funds as exempt property, and seek to avoid JLM's asserted lien on the garnished funds. Debtors brought the turnover action against JLM and American, seeking release of the garnished funds to them. In their proposed Chapter 13 plan, Debtors classify JLM's claim as unsecured.

JLM argues that, because the agreed judgment of garnishment was signed by the state court judge prior to Debtors' petition, title to the garnished funds passed to JLM before Debtors' bankruptcy. The garnished funds, therefore, never became property of the estate. Furthermore, JLM contends that it has a valid lien against the garnished funds pursuant to the agreed judgment of garnishment, and that the garnished funds were not exempt at the time that the lien attached. Thus its pre-petition judicial garnishment lien is superior to Debtors' subsequent claim of exemption, JLM contends.

### Discussion

**Propriety of State Court Agreed Judgment**

■ As an initial matter, Debtors contest the propriety of the state court's agreed judgment of garnishment. Debtors argue that the agreed judgment was signed "by the state court by mistake." Texas law provides that, when a motion to dissolve a writ of garnishment is filed, all proceedings concerning the writ of garnishment are stayed until the hearing on the motion. *See* Tex.R.Civ.P. 664a. The state court signed the agreed judgment five days after Debtors filed their motion to dissolve, but a month before the hearing on said motion. Entry of the agreed judgment was therefore premature. *See, generally, Jefferson Sav. & Loan Ass'n v. Adams,* 802 S.W.2d 811, 813 (Tex.App.—San Antonio 1991, writ denied). However, although Debtors raise this issue in their stipulations, Debtors neither affirmatively request the court to review the propriety of the state court agreed judgment, nor do Debtors cite any authority for voiding such judgment. Debtors' pleadings treat the agreed judgment of garnishment as a valid fait accompli. The court likewise treats

the agreed judgment as a valid and binding state court judgment. *See, e.g., Prin Corp. v. Altman (In re Altman)*, 265 B.R. 652, 657 (Bankr.D.Conn.2001).

### Whether Title to Garnished Funds Passed Pre–Petition to JLM

■ JLM argues that pursuant to the agreed judgment of garnishment, title to the garnished funds passed pre-petition from Debtors to JLM and the garnished funds therefore never became a part of the Debtors' bankruptcy estate. JLM cites to this court's opinion in *In re Bensen* as support for this conclusion. 262 B.R. 371 (Bankr.N.D.Tex.2001). JLM's argument that title to the garnished funds passed pre-petition is incorrect; *In re Bensen* stands for the very opposite of what JLM argues. *Id.* at 381.

■ Unlike in some states, a judgment of garnishment in Texas is not self executing. *See id.* at 378. "In Texas, ownership of property subject to a judgment does not transfer until a writ of execution is issued and levied." *Id., quoting Baytown State Bank v. Nimmons*, 904 S.W.2d 902, 906–07 (Tex.App.—Houston [1st Dist.] 1995, writ denied). It is not the service of the writ of garnishment or the entry of a judgment of garnishment, therefore, that transfers title to garnished funds. Rather, service of the writ of execution transfers title in such funds. *See id.* Execution cannot issue before the expiration of thirty days from the time a final judgment is signed. *See In re Bensen*, 262 B.R. at 378. *See also* Tex. R.Civ.P. 627. Debtors filed for bankruptcy protection on December 18, 2001—twenty-seven days after the state court signed the agreed judgment. Upon the filing for bankruptcy, the automatic stay deprives a state court of jurisdiction to enforce or execute on a judgment of garnishment.

*See In re Bensen*, 262 B.R. at 378; *Nimmons*, 904 S.W.2d at 905.

Therefore, as there was no execution under the agreed judgment before the expiration of thirty days after the agreed judgment was signed, and because the bankruptcy stayed any further execution or enforcement of the agreed judgment, title to the garnished funds never passed to JLM pre-petition. *See In re Bensen*, 262 B.R. at 381.

### · Turnover Action

■ "The garnishee impounds the funds and acts as a 'receiver or officer of the court.'" *In re Bensen*, 262 B.R. at 381, *quoting Nimmons*, 904 S.W.2d at 906. Legal title or equitable title to funds on deposit with a bank belong to the person named on the account. *See Southwest Bank & Trust Co. v. Calmark Asset Mgmt. Inc.*, 694 S.W.2d 199, 200 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Because title to the garnished funds did not pass to JLM pre-petition, Debtors retained title. *See* 11 U.S.C. § 541(a) (2001); *In re Bensen*, 262 B.R. at 381.

■ The filing of a bankruptcy petition creates a bankruptcy estate comprised of, among other things, all of the legal or equitable interests of debtors in property. *See* 11 U.S.C. § 541(a)(1). Debtors' legal and equitable interests in the garnished funds therefore became property of the bankruptcy estate. *See In re McNeely*, 51 B.R. 816, 820 (Bankr.D.Utah 1985). Section 542 of the Code "requires an entity ... holding any property of the debtor that the trustee can use under § 363 turn that property over to the trustee." *United States v. Whiting Pools Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983). Because title to the garnished funds remains with Debtors, JLM and American must release the garnished funds and make those available for use by

the estate.[1] *See Sininger v. Fulton (In re Sininger)*, 84 B.R. 115, 117–18 (Bankr. S.D.Ohio 1988) (holding that garnishment merely created a lien, which did not deprive debtor of an equitable interest in the garnished funds, and that the garnished funds had to be turned over to the debtor); *Carlsen v. I.R.S. (In re Carlsen)*, 63 B.R. 706, 710–11 (Bankr.C.D.Cal.1986) ("under 11 U.S.C. § 542 . . . [p]ositive action on the part of the creditor is required not only to halt the continuation of the garnishment, but to turn over to the trustee sums that it received from the garnishee," where, under California law, the garnishment itself did not divest the debtor of legal title to the garnished funds).

 It does not matter that Debtors did not have possession or use of the garnished funds pre-petition because the funds were impounded in the hands of the garnishee—only if title to the funds had passed pre-petition would the funds be beyond the reach of section 542. *See Whiting Pools Inc.*, 462 U.S. at 209–11, 103 S.Ct. at 2316–17 (mandating return of property taken by the IRS pre-petition because, even though the IRS took possession of the property, title to such property did not transfer until such time as the IRS actually sold such property). JLM's argument that the writ of garnishment or the agreed judgment of garnishment divested Debtors of all interest in the garnished funds "makes sense . . . only in a state which would recognize execution of the original writ of garnishment as accomplishing the complete end to the debtor's legal and equitable rights" in the garnished property. *In re Carlsen*, 63 B.R. at 709. However, as stated earlier, neither the writ of garnishment nor the agreed judgment of garnishment operated to divest Debtors of all their interest in the garnished funds under Texas law. *See In re Bensen*, 262 B.R. at 381. Such funds are property of the estate and should be turned over to the estate pursuant to section 542.[2] *See In re Carlsen*, 63 B.R. at 710–11.

1. Several courts have addressed the issue of whether a garnishor violates the automatic stay by not immediately ceasing all garnishment procedures upon the filing of bankruptcy. *See United States v. Fernandez (In re Fernandez)*, 132 B.R. 775, 778–79 (M.D.Fla. 1991); *In re Manuel*, 212 B.R. 517, 518–19 (Bankr.E.D.Va.1997); *Carlsen v. I.R.S. (In re Carlsen)*, 63 B.R. 706, 710 (Bankr.C.D.Cal. 1986). *But see Gouveia v. I.R.S. (In re Quality Health Care)*, 215 B.R. 543, 579–80 (Bankr. N.D.Ind.1997). In this regard, such courts have found that, by not immediately releasing garnished funds, a garnishor exercises control over estate property in violation of the stay, making available stay violation remedies to debtors. *See, e.g., In re Carlsen*, 63 B.R. at 710–11 ("Positive action on the part of the creditor is required not only to halt the continuation of the garnishment, but to turnover to the trustee sums that it received from the garnishee").

2. The court notes that two corollary issues are raised, however. First is the question of whether exempt property is property of the estate. Second is the question of whether the debtor can seek turnover under section 542. As to the first question, JLM's argument that the agreed judgment of garnishment defeats Debtors' title to the garnished funds is premised on the status of the funds at the time the bankruptcy was filed. As Debtors held an interest in the garnished funds at the time they filed bankruptcy, property that is claimed exempt, like other scheduled property, is property of the estate. *See, e.g., Hardage v. Herring Nat'l Bank (In the Matter of Hardage)*, 837 F.2d 1319, 1322 (5th Cir.1988); *Trujillo v. Grimmett (In re Trujillo)*, 215 B.R. 200, 205 (9th Cir. BAP 1997); *In re Fishman*, 241 B.R. 568, 574 (Bankr.N.D.Ill.1999); *In re Cathcart*, 203 B.R. 599, 601 n. 1 (Bankr. E.D.Va.1996); *Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 737 (Bankr.W.D.Tex.1995). Affirmative action is required by the debtor to remove exempt property from the estate. *See In the Matter of Hardage*, 837 F.2d at 1322; *In re Reed*, 184 B.R. at 737. The Debtors' claim of exemption is not resolved until the time for filing objections to exemptions has

**Whether Debtors May Avoid JLM's Lien**

■ Section 522(f) permits a debtor to avoid a judicial lien: "[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section." 11 U.S.C. § 522(f)(1) (2001); *Henderson v. Belknap (In the Matter of Henderson)*, 18 F.3d 1305, 1308 (5th Cir.1994). *See also In re Bensen*, 262 B.R. at 379. The Fifth Circuit has recognized that the following three elements must be met in order for the debtor to avoid a judicial lien: (1) the lien must be a judicial lien; (2) the lien is fixed against an interest of the debtor in property; and (3) the lien impairs an exemption to which the debtor would otherwise be entitled. *See In the Matter of Henderson*, 18 F.3d at 1308. "A debtor may avoid a judicial lien when the judicial lien fastens liability to and impairs the debtor's exempt property." *In re Bensen*, 262 B.R. at 379 (internal quotations omitted). Generally, a debtor can avoid judicial liens as a matter of course. *See id; In re Levi*, 183 B.R. 468, 472 (Bankr.N.D.Tex. 1995).

■ It is well established that a writ of garnishment constitutes a judicial lien for purposes of section 522(f) of the Bankruptcy Code. *See In re Bensen*, 262 B.R. at 379. The writ of garnishment, and thereby the judicial lien, is fixed and perfected on the date that the writ is served on the garnishee. *See id.* Furthermore, the judicial lien at question in this case is fixed against an interest of the debtor in property, because Debtors' interests in the garnished funds did not pass to JLM prepetition. *See id.* at 379–81. Therefore, JLM's garnishment is a judicial lien which is fixed against an interest in Debtors' property, thereby satisfying the first two elements of the Fifth Circuit's test. *See id.*

passed. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

The issue regarding a debtor's right to seek a turnover is raised by the language of section 542. Section 542 provides that an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. § 542(a) (2001). Section 542 does not specifically provide that only the trustee has standing to bring a section 542 action. However, because section 542 provides that an entity holding estate property "shall deliver to the trustee" such property, section 542 can be read as providing that only the trustee has section 542 standing. *Id.* Several courts have held that a Chapter 13 debtor has standing to seek turnover under section 542. *See TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. BAP 1999); *GMAC v. Ryan (In re Ryan)*, 183 B.R. 288, 289 (M.D.Fla.1995); *In re Dash*, 267 B.R. 915, 917 (Bankr.D.N.J.2001); *Jennings v. R & R Cars and Trucks (In re Jennings)*, 2001 WL 1806980 *4 n. 5 (Bankr.D.S.C.2001) (noting that "[t]here are a great many reported decisions in which Chapter 13 debtors have been awarded turnover of estate property pursuant to § 542"); *Patterson v. Chrysler Fin. Co. (In re Patterson)*, 2000 WL 1692838 *6 (Bankr. E.D.Pa.2000); *Brown v. Town & Country Sales and Serv. Inc. (In re Brown)*, 237 B.R. 316, 320 (Bankr.E.D.Va.1999); *Coleman v. Grand Nat'l Bank (In re Coleman)*, 229 B.R. 428, 429–30 (Bankr.N.D.Ill.1999); *Nash v. Ford Motor Credit Co. (In re Nash)*, 228 B.R. 669, 671–72 (Bankr.N.D.Ill.1999); *Cardillo v. Andover Bank (In re Cardillo)*, 169 B.R. 8, 11 (Bankr.D.N.H.1994); *Williams v. Guaranty Agric. Credit Corp. (In the Matter of Williams)*, 44 B.R. 422, 424 (Bankr.N.D.Miss.1984); *In re Robinson*, 36 B.R. 35, 36–37 (Bankr. E.D.Ark.1983); *GMAC v. Radden (In re Radden)*, 35 B.R. 821, 826 (Bankr.E.D.Va.1983). Regardless of the foregoing authorities, if estate property is properly claimed as exempt (and any lien against such property is avoided), the debtor is certainly entitled to possession of such property.

Debtors claim the garnished funds as exempt pursuant to section 522(d)(5). Section 522(d)(5) provides an exemption for the "debtor's aggregate interest in any property, not to exceed in value $925 plus up to $8,725 of any unused amount of the exemption provided under [section 522(d)(1)]." 11 U.S.C. § 522(d)(5). Section 522(d)(1) provides an exemption of up to $17,425 of Debtors' aggregate interest in their residence. *Id.* § 522(d)(1). Debtors have not claimed any exemption pursuant to section 522(d)(1), meaning that the whole of the $8,725 may be added to the $925 to arrive at the total section 522(d)(5) exemption value of $9,650. *Id.* § 522(d)(5). Thus, even without addressing questions concerning whether Debtors are entitled to combine their individual exemptions, it is clear that, absent JLM's lien, Debtors would be entitled to exempt all of the $8,364.51 in garnished funds. The garnishment lien, therefore, "impairs an exemption to which the debtor would otherwise be entitled." *See Henderson,* 18 F.3d at 1308; *In re Bensen,* 262 B.R. at 381 ("[a]s the court rejects [garnishor's] passage of title argument, it cannot be disputed that the writ of garnishment, as a judicial lien, impairs Bensen's exemption ... [i]f not avoided, the judicial lien would eliminate Bensen's exemption").

JLM does not contest Debtors' avoidance action beyond arguing that Debtors cannot claim the garnished funds as exempt. In support of this argument, JLM cites to *In re Flynn,* 238 B.R. 742 (Bankr. N.D.Ohio 1999). JLM's reliance on *In re Flynn* is misplaced. While *In re Flynn* considered whether a debtor could exempt garnished funds, the debtor in that case did not bring an action to avoid the lien on the garnished funds. *See id.* at 743–44. The court held that the debtor could not exempt the funds because the interest of the garnishor in the funds was superior to the debtor's subsequent claim of exemp-

tion in such funds. *See id.* at 747. The court held so because, under section 522(c)(2), the "prejudgment garnishment order obtained against the Debtor was a debt secured by a lien." *Id.* Under section 522(c)(2), such property is indeed liable for the debt. *Id.* at 745. Thus, if this were the end of the inquiry, JLM may very well be correct that Debtors cannot exempt the garnished funds because JLM's interest in the garnished funds preceded, and is therefore superior to, Debtors' claim of exemption in such funds. *See id.* at 747.

However, section 522(c)(2) specifically provides that the debt that is "secured by a lien" refers to a lien "that is ... not avoided under subsection (f) or (g) of this section." 11 U.S.C. § 522(c)(2)(A)(i) (2001). JLM ignores the *In re Flynn* court's statement that "an otherwise valid lien will not survive bankruptcy if ... the lien is avoided under the lien avoidance provisions of 11 U.S.C. § 522(f)." *In re Flynn,* 238 B.R. at 745. The key difference, therefore, between *In re Flynn* and the case at bar is that the *In re Flynn* debtor was not attempting to avoid the judicial lien under section 522(f). If the debtor successfully avoids a judicial lien, *In re Flynn's* holding that a debtor cannot exempt garnished funds subject to a judicial lien has no relevance, because the impediment to the exemption—the judicial lien—will have been avoided. 11 U.S.C. § 522(c)(2)(A)(i).

■ It is clear that a debtor may avoid an otherwise attached and perfected judicial lien on garnished funds pursuant to section 522(f). *See In the Matter of Henderson,* 18 F.3d at 1308; *In re Bensen,* 262 B.R. at 379; *Thomas v. Beneficial of Mo. (In re Thomas),* 215 B.R. 873, 875 (Bankr.E.D.Mo.1997); *In re Vasquez,* 205 B.R. 136, 137–38 (Bankr.N.D.Ill.1997) (avoiding pre-petition wage garnishment

lien). The garnishment order at issue in this case constitutes a judicial lien that is fixed against an interest of the Debtors. *In re Bensen*, 262 B.R. at 379–81. Furthermore, as both *In re Flynn* and *In re Bensen* illustrate, JLM's judicial lien impairs Debtors' otherwise valid exemption, because, but for the avoidance action, the lien eliminates Debtors' exemption claim to the garnished funds. *In re Bensen*, 262 B.R. at 381; *In re Flynn*, 238 B.R. at 747. Because JLM's lien on the garnished funds is a judicial lien that is fixed against Debtors' interests, and because such lien impairs an exemption that Debtors would otherwise be entitled to claim, the garnishment lien will be avoided. *See In the Matter of Henderson*, 18 F.3d at 1308.

**JLM's Claim as Unsecured**

■ JLM has asserted its lien on the garnished funds as the only security for its claim. By granting Debtors' motion to avoid the lien, JLM's claim is deemed unsecured and treatment as such in Debtors' plan is proper. *See* 11 U.S.C. § 506(a); *McRoberts v. Transouth Fin. (In re Bell)*, 194 B.R. 192, 197–98 (Bankr. S.D.Ill.1996); *In re Moe*, 199 B.R. 737, 740 (Bankr.D.Mont.1995); *In re Driver*, 133 B.R. 476, 479 (Bankr.S.D.Ind.1991).

**Debtors' Dismissal of Case and Avoided Lien**

■ JLM argues that if the court avoids JLM's lien and allows Debtors access to the garnished funds, nothing prevents Debtors from dismissing this case and spending the funds before JLM could recover said funds. This concern arises from the Debtors' right to dismiss under section 1307(b) and the liquid nature of the garnished funds. The court simply notes that the Code, while authorizing dismissal under section 1307(b), also allows avoidance of the lien under section 522(f).

Plus, if Debtors dismiss their case, JLM's lien in the garnished funds is reinstated, and JLM can immediately move in state court to protect such funds. *See* 11 U.S.C. § 349(b)(1)(B) (2001); *In re Bell*, 194 B.R. at 198; *In re Scheierl*, 176 B.R. 498, 504–505 n. 13 (Bankr.D.Minn.1995). In addition, no evidence was presented that Debtors would dismiss their case solely as a means to gain access to (and spend) the garnished funds. Indeed, as exempt property, the garnished funds can be expended by the Debtors at their discretion while in bankruptcy. The court is not inclined to speculate on the possible dismissal of the case. As a Chapter 13 debtor does not receive a discharge upon dismissal, a voluntary dismissal is unlikely unless major problems develop in the case.

**American's Attorney's Fees**

Both JLM and Debtors agree that American is entitled to $750 in attorney's fees from the garnished funds for defending itself in this action. The court will not disturb the parties' agreement.

*Conclusion*

Under Texas law, only a writ of execution, and not an agreed judgment of garnishment, works to transfer title in garnished funds to the garnishor. *See In re Bensen*, 262 B.R. 371, 378 (Bankr.N.D.Tex. 2001). Because JLM did not obtain a writ of execution prior to Debtors' bankruptcy filing, title to the garnished funds remained with Debtors. *See id.* at 381. The garnished funds therefore became property of the bankruptcy estate.

JLM's garnishment constitutes a judicial lien that attached to the garnished funds. *See In re Bensen*, 262 B.R. at 379. Such lien impairs Debtors' exemption. *See id.* at 381. Debtors are therefore entitled to avoid the judicial lien pursuant to section 522(f). *See Henderson v. Belknap (In the*

*Matter of Henderson),* 18 F.3d 1305, 1308 (5th Cir.1994).

Accordingly, the court: (1) grants Debtors' motion to avoid lien; and (2) directs turnover of the garnished funds to Debtors.